# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| Cherry Grove Beach Gear, LLC, )<br>Derek Calhoun, and )<br>Jacqueline Calhoun, )<br>   )<br>   Plaintiff, )<br>   )<br>vs. )<br>   )<br>City of North Myrtle Beach, )<br>   )<br>   Defendant. )<br>_____ ) | **COMPLAINT**<br>(Trial By Jury Demanded) |

Now comes Cherry Grove Beach Gear, LLC ("**CGBG**" or "Plaintiff CGBG"), Derek Calhoun ("D. Calhoun" or "Plaintiff D. Calhoun") and Jacqueline Calhoun ("J. Calhoun" or "Plaintiff J. Calhoun"), complaining of the Defendant, the City of North Myrtle Beach, a South Carolina municipal corporation ("**City**"), and would show this Honorable Court as follows:

## **PARTIES AND JURISDICTION**

1. Plaintiff CGBG is a South Carolina limited liability company that, at all times relevant hereto, has transacted business in Horry County, South Carolina.

2. Plaintiff, D. Calhoun, is a member of the United States armed forces, and a citizen and resident of Horry County and a principal of Plaintiff CGBG.

3. Plaintiff, J. Calhoun, is a citizen and resident of Horry County and a principal of Plaintiff CGBG.

4. City is a South Carolina municipal corporation located in Horry County, South Carolina.

5. This United States Court for the District of South Carolina, Florence Division, has personal jurisdiction over the parties hereto, and the claims made by the Plaintiffs include and Federal questions as defined in 28 U.S.C. § 1331, 1337 and 15 US Code § 1 et. seq. and 42 US Code §1983.

6. This Honorable Court has further supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over the matters complained of, to the extent that there exists a common nucleus of operative fact that would also give rise to causes of action under color of the law of the State of South Carolina.

7. Venue for this action is proper in this District Court for South Carolina, Florence Division.

## FACTUAL ALLEGATIONS

8. Each and every allegation set forth in this Complaint is re-alleged and incorporated into these factual allegations as if it were repeated verbatim herein.

9. The City of North Myrtle Beach is situated geographically adjacent to the shores of the Atlantic Ocean. There are approximately nine (9) miles of beach located within the jurisdictional limits of the City of North Myrtle Beach.

10. Plaintiffs D. Calhoun and J. Calhoun are citizens and residents of Horry County and North Myrtle Beach, and regularly pay both local accommodations taxes and hospitality taxes that have been imposed by Defendant City's Council.

11. Pursuant to S. C. Code 5-7-145 and the general laws of the State, City is empowered to provide lifeguard and other safety related services on and along the public beaches within its corporate limits. A coastal municipality may enact and enforce regulations it determines necessary for the safety of all persons on the beach.

12. S. C. Code 5-7-145 also provides expressly:

(B) **Lifeguard services may be provided using municipal employees <u>or</u>** by service agreement with a private beach safety company.

**<u>If</u> the municipality elects to provide the services by an agreement with a private beach safety company, the following conditions apply:**

(1) the municipality shall follow the procedures of the State Procurement Code, as found in Chapter 35 of Title 11, or the procedures of the municipal procurement code, in the awarding of contracts with private beach safety companies;

(2) the agreement between the municipality and private beach safety company may last no longer than seven years;

Page 2

>(3) the municipality may grant the exclusive right to the beach safety company to rent only the beach equipment and to sell only the items to the public on the beach that are allowed by the municipality on the effective date of this section; provided, however, that on and after the effective date of this section there shall be no granting of the right to rent any additional tangible items, or to sell any beverages to the public on the beach, or otherwise, unless and until additional personnel are hired for the additional Gear and additional activities sufficient in number so that employees already employed on the effective date of this section will not be unduly burdened as determined by the appropriate municipal governing body;
>
>(4) lifeguard personnel employed by the private beach safety company must be tested and certified as required by the municipality; and
>
>(5) the conduct of the limited commercial activities granted to the private beach safety company shall not prevent or interfere in a substantial way with the peaceful, recreational use of the public beach by the general public.
>
>(**bold and underlined emphasis added**)

13. Upon information and belief, and at all times relevant to Plaintiffs, Defendant City has not issued a franchise agreement to any provider of lifeguard services or public state since adopting City Ordinance 5-14 but instead has employed lifeguards directly as City's employees.

14. Heretofore, City's Council has enacted City Ordinance 5-14, wherein it seeks to restrict the sale, leasing or rental of goods, wares upon the public beaches located within the jurisdictional limits of the City of North Myrtle Beach.

15. The express language of North Myrtle Beach City Ordinance 5-14 is set forth immediately below:

**Sec. 5-14. Selling or leasing goods—Prohibited, exceptions.**

(a)     Upon the public beaches, public waters or any public property except as otherwise authorized by city ordinance, no person shall sell, lease or rent any goods, wares or other property except that this provision shall not prohibit the holder of a beach franchise or license from exercising the rights and privileges granted therein, nor

shall it prohibit the city from granting to the holder of a beach service franchise or license the right and privilege of selling or renting upon the public beaches or waters such items of personal property as are customarily sold or rented by the holders of such franchises or licenses, nor shall it prohibit city council from authorizing activities of a promotional nature on public property with the consent of council for each occurrence. *Furthermore, this provision shall not prohibit the City of North Myrtle Beach and its authorized employees from selling and or renting goods and wares such as beach umbrellas and chairs and concession items in conjunction with the city providing lifeguard services.*

(b)     Upon the public beaches or public waters, no person shall construct a pier or other amenity, except that this provision shall not prohibit the holder of a pier franchise exercising the rights and privileges granted therein, nor shall it prohibit the city from granting the holder of a pier franchise or license the rights and privileges of conducting such activity from such pier as the provisions of the franchise or license allow.

(Ord. of 5-5-81, § 1; Ord. No. 90-7, 4-9-90; Ord. No. 92-38, § 1, 8-3-92; Ord. No. 98-25, § 1, 8-17-98; Ord. No. 07-29, 4-2-07)

16. Plaintiffs are informed and believe that Defendant City and the City's Council never, and certainly at all times relevant hereto, intended to issue any franchise agreement to any third-party vendor to provide life-guard or public safety services, and that City's adoption of an ordinance provision that authorizes the entry into a franchise agreement was a sham of an ordinance designed to restrict competitive business practices and monopolize Defendant City's business in order to maximize profits available to Defendant City.

17. City has also engaged, almost exclusively, in the rental of beach chairs and beach umbrellas and the sale of beverages and concessions on the beaches located within the jurisdictional limits of the City of North Myrtle Beach.

18. Historically and in recent years, Defendant City has derived, annually, between two and one-half and three million dollars gross revenue in each summer season by the rental and set up of beach chairs and beach umbrellas upon the beaches located within the jurisdictional limits of the City of North Myrtle Beach.

19. Upon information and belief, Defendant City has not collected and remitted sales and use taxes and accommodations taxes associated with the leasing of beach chairs and beach umbrellas as a private entity would have been required to remit.

20. In or about 2019, Plaintiffs, along with Plaintiff J. Calhoun's father Ronald Johnson, organized and began operation of their business through which Plaintiffs purchase, sell, and lease beach chairs, beach umbrellas, coolers, floats, and accessories for use on the beaches located within the City of North Myrtle Beach. Plaintiffs' business services also include delivery, set up on the beach and the taking down and removal of the chairs and accessories.

21. Plaintiffs applied for and were issued an initial Business License by the City to operate Plaintiffs' business within the jurisdictional limits of the City of North Myrtle Beach. Plaintiffs thereafter applied for and renewed Plaintiff CGBG's Business License for two additional and consecutive years.

22. However, the terms, conditions, requirements, and prohibitions of North Myrtle Beach City Ordinance 5-14 did not prohibit the operations of Plaintiffs' business.

23. Plaintiffs were advised by officials of Defendant City that the only concern was that of the safety of putting up the umbrellas and that there was no issue presented with Plaintiffs setting up on the Beach. Defendant City thereafter reissued a North Myrtle Beach Business License to CGBG.

24. Plaintiffs have operated their business lawfully within the City of North Myrtle Beach, since being issued a Business License, taking care to adhere to City's ordinances concerning the location of where beach chairs, umbrellas and accessories can be set up on the beach and the daily curfew by which the items must be removed from the beaches.

25. Plaintiffs have also provided services and leased beach chairs, beach umbrellas and beach wares to users in area beaches, including Sunset Beach, NC.

26. In the operations of their business, Plaintiff CGBG has entered into annual contracts with both homeowners' associations and individuals for the provisions of beach chairs, beach umbrellas and beach wares.

27. In the operations of their business, Plaintiffs have employed electronic means of advertising upon social media platforms, reservations, contracting and collection of

payments such that Plaintiffs can transact their business with purported vacationers and locals in an on-line platform of the internet.

28. The rental of beach chairs and beach umbrellas to vacationers and residents and the sale of beverages and concessions on the beaches located within the jurisdictional limits of the City of North Myrtle Beach are activities of interstate commerce.

29. In the operations of their business, Plaintiff CGBG has collected sales and use taxes and accommodations taxes from patrons, and remitted same as required by law.

30. The South Carolina General Assembly passed legislation to authorize Defendant City to adopt a local accommodations tax, which is codified in the Local Accommodations Tax Act, SC Code 6-1-500 et. seq. A part and parcel of the Local Accommodations Tax Act, specifically SC Code §6-1-520(B) provides expressly "(B) All proceeds from a local accommodations tax must be kept in a separate fund segregated from the imposing entity's general fund. All interest generated by the local accommodations tax fund must be credited to the local accommodations tax fund."

31. The South Carolina General Assembly passed legislation to authorize Defendant City to adopt a local hospitality tax, which is codified in the Local Hospitality Tax Act, SC Code 6-1-700 et. seq. A part and parcel of the Local Accommodations Tax Act, specifically SC Code §6-1-720(B) provides expressly "(B) All proceeds from a local hospitality tax must be kept in a separate fund segregated from the imposing entity's general fund. All interest generated by the local hospitality tax fund must be credited to the local hospitality tax fund."

32. Defendant City, by and through its Council, has adopted both an accommodations tax and a hospitality tax pursuant to the Local Hospitality Tax Act, SC Code 6-1-700 et. seq. and the Local Hospitality Tax Act, SC Code 6-1-700 et. seq.

33. Plaintiffs are informed and believe that Defendant City has mishandled accommodations and hospitality taxes remitted by Plaintiffs and others by comingling the funds with Defendant City's general fund, in violation of SC Code §6-1-520(B) and SC Code §6-1-720(B).

34. Plaintiffs, by and through counsel, have communicated on numerous occasions with the City Attorney for the City of North Myrtle Beach, wherein it was conceded by the

City Attorney that Plaintiffs' business practices do not violate the specific terms of the City's Ordinance 5-14.

35. On numerous occasions since Plaintiffs organized their business, one or more representatives of Defendant City have sought to harass and intimidate Plaintiffs and their staff by asserting that Defendant City's Ordinance 5-14 prohibits that conduct of Plaintiffs' business.

36. On one such occasion, a uniformed North Myrtle Beach Police Officer visited Plaintiff D. Calhoun on a beach location and expressly told him that the City Attorney for North Myrtle Beach informed the officer that his number one priority was to get rid of Plaintiff CGBG.

37. On another such occasion, on or about July 06, 2022, a uniformed North Myrtle Beach Police Officer visited Plaintiff J. Calhoun and said officer stated that he was instructed to ticket them every day, but not to make any arrest.

38. Between Plaintiffs D. Calhoun and J. Calhoun, they have now been issued summons and criminal citations on not less than eight (8) occasions, with one such citation being issued every day in keeping with what the uniformed North Myrtle Beach Police Officer advised Plaintiffs that his instructions were.

39. The issuance of a criminal citation for violation of a city ordinance is a non-custodial arrest that creates a public record of alleged criminal conduct and impunes the reputation of the arrestee.

40. Repeated criminal citations, if convicted of, are a factor that Defendant's Council could rely upon to revoke Plaintiff CGBG's business license.

41. Plaintiffs D. Calhoun and J. Calhoun have been forced to retain attorneys to represent them in the defense of criminal charges levied against them, and in so doing have incurred significant legal fees.

42. Heretofore, in or about June of 2022, City's Council has enacted an amendment to City Ordinance 5-24, wherein it specifically sought to outlaw the operations of Plaintiffs' business practices. In so doing, Defendant City did not seek to impose any amortized period during which Plaintiffs could recoup their investment or derive a reasonable return upon their investments.

43. The specific amendments to Defendant City's Ordinance 5-24 have not yet been codified. Notwithstanding Defendant City and its officers and agents have sought to enforce the provisions of the amended ordinance by bringing criminal charges against Plaintiffs D. Calhoun and J. Calhoun.

## **FOR A FIRST CAUSE OF ACTION**
(Violation of Sherman Antitrust Act & Clayton Act)

44. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it were repeated verbatim herein.

45. The United States Congress enacted the Sherman Anti-Trust Act, as the first Federal act that outlawed monopolistic business practices. The Act was modified by the Clayton Act. The Act is codified at 15 US Code § 1 et. seq. and provides expressly in 15 US Code §2 that "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."

46. In 15 US Code §14, the Act expressly provides "It shall be unlawful for any person engaged in commerce, in the course of such commerce, to lease or make a sale or contract for sale of goods, wares, merchandise, machinery, supplies, or other commodities, whether patented or unpatented, for use, consumption, or resale within the United States or any Territory thereof or the District of Columbia or any insular possession or other place under the jurisdiction of the United States, or fix a price charged therefor, or discount from, or rebate upon, such price, on the condition, agreement, or understanding that the lessee or purchaser thereof shall not use or deal in the goods, wares, merchandise, machinery, supplies, or other commodities of a competitor or competitors of the lessor or seller, where the effect of such lease, sale, or contract for sale or such condition, agreement, or understanding may be to substantially lessen competition or tend to create a monopoly in any line of commerce."

47. While there are governmental exceptions to the application of the Sherman Act/Clayton Act to the governmental operations of a municipality, which are coined "state action", Plaintiffs are informed and believe that Defendant City, and its Council and officials, are not entitled to rely upon the "state action" immunities that are sometimes afforded to a sovereign under the doctrine of "state action" immunity first set forth in Parker v. Brown 317 U.S. 341, 63 S. Ct. 307.

48. The Supreme Court of the United States has clarified certain ambiguities in the application of the "state action" doctrine arising since the decision in Parker. In Town of Hallie vs. City of Eau Claire, 471 U.S. 34, 85 L.Ed.2d 24 (185), the Court reiterated that in order for a municipality or other governmental entity to qualify for the state action exemption from the antitrust laws, it must demonstrate "that it is engaging in the challenged activity pursuant to a clearly expressed state policy." More specifically, the statute or enactment in question must "evidence a clearly articulated and affirmatively expressed state policy to displace competition. . . " 85 L.Ed.2d at 32. See. Opinion asking whether the Ordinance of the Town of Salley relating to the Town's annual festival, the "Chitlin Strut", is valid. (South Carolina Office of the Attorney General, 1996).

49. Defendant City cannot show and establish that it is engaging exclusively in the leasing of beach chairs and umbrellas, and sale of concessions, pursuant to a clearly expressed state policy, as the South Carolina legislature has never clearly articulated and affirmatively expressed a state policy to displace competition. *See* Town of Salley, *Id.*

50. Plaintiffs are entitled, pursuant to 15 US Code §15 to sue for and have declaratory relief upon a finding that Defendant City has violated the provisions of the Sherman Anti-Trust Act.

51. Plaintiffs are entitled, pursuant to 15 US Code §26 to sue for and have injunctive relief restraining violations of the Sherman Anti-Trust Act and Clayton Act and for an award of the costs of this suit including a reasonable attorney's fee.

52. Plaintiffs are informed and believe that City, by and through its Council and officials, have unlawfully sought to impose an unlawful monopoly on the rentals of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches that are located within the jurisdictional limits of the City of North Myrtle Beach.

53. Plaintiffs are informed and believe that they are entitled to inquiry by this Court and a declaration that Defendant City has violated the provisions of the Sherman Anti-Trust Act/Clayton Act and for an award of injunctive relief, actual damages, statutory damages, attorney's fees, and the costs incurred in both this action and in the defense of criminal charges levied against Plaintiffs D. Calhoun and J. Calhoun.
54. Plaintiffs are further informed and believe that they are entitled to injunctive relief in the form of this Court's Order to cease and desist from further monopolistic activities.

## FOR A SECOND CAUSE OF ACTION

(Regulatory Taking- under both the 5th Amendment to the United States Constitution and the S.C. Constitution Art. I, 13)

55. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it was repeated verbatim herein.
56. The Fifth Amendment to the United States Constitution, which is binding upon the states under the Fourteenth Amendment, in relevant part provides expressly in the "Takings Clause" that no person shall be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation"
57. The Takings Clause "is designed not to limit the governmental interference with property rights *per se*, but rather to secure compensation in the event of otherwise proper interference amounting to a taking." *Lingle v. Chevron U.S.A. Inc*., 544 U.S. 528, 536–37 (2005) (quoting *First English Evangelical Lutheran Church of Glendale v. County of Los Angeles*, 482 U.S. 304, 315 (1987) (emphasis in original)).
58. The Takings Clause bars government actors "from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49 (1960).
59. When adopting North Myrtle Beach City Ordinance 5-24, Defendant City's Council made express findings in subsection (a) that "it is desirable and necessary to preserve the unique nature of the public beaches and to protect all persons who utilize the beaches from harm, undue annoyance, disturbance and inconvenience".

60. Under North Myrtle Beach City Ordinance 5-24 all economically beneficial and profitable uses of Plaintiffs' business, save bare ownership, were extinguished.

61. Under the framework articulated by the Supreme Court of the United States in *Penn Central Transportation Co. v. New York City*, 438 U.S. 104 (1978), North Myrtle Beach City Ordinance 5-24 constitutes a taking based upon "the magnitude of [the ordinance's] economic impact and the degree to which [the ordinance] interfere[s] with legitimate property interests." *Lingle,* 544 U.S. 528 at 540.

62. The Supreme Court's analysis in *Penn Central, Id.* sets forth the framework for assessing whether government action is considered a regulatory taking, identifying "several factors that have particular significance." *Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 124 (1978).

63. The court looks to three factors when analyzing a taking: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action," *Penn Cent*., 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." *Palazzolo,* 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); *see also Tahoe–Sierra*, 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); *Yee v. City of Escondido*, 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail[ ] complex factual assessments"). *Lost Tree Vill. Corp. v. United States*, 115 Fed. Cl. 219, 228 (2014) (emphasis added).

64. Even if the regulation falls short of eliminating all economically beneficial use, a taking nonetheless may have occurred, *Palazzolo v. Rhode Island*, 533 U.S. 606 at 617, (2001).

65. The South Carolina Constitution also expressly provides in Article I, Section 13, that "private property shall not be taken for private use without the consent of the owner, nor for public use without just compensation being first made for the property."

66. To the extent that Defendant City alleges or can demonstrate legal authority to adopt and enforce North Myrtle Beach City Ordinance 5-24, which is denied, the same will place the cost of the ordinance - presumably issued for the benefit of the public –

squarely upon the shoulders of Plaintiffs without justly compensating Plaintiffs for the taking undertaken for the benefit to the public.

67. Without extending constitutionally required just compensation to Plaintiffs, North Myrtle Beach City Ordinance 5-24 jeopardizes the sustainability of Plaintiffs' businesses and the rights of the Plaintiffs with respect to property ownership.

68. Defendant's actions violate the Takings Clause of both the United States Constitution and the South Carolina Constitution in that Plaintiffs' business cannot be economically viable in light of the adoption of North Myrtle Beach City Ordinance 5-24.

69. If Defendant's illegal and wrongful decision to target Plaintiffs' business and adopt North Myrtle Beach City Ordinance 5-24 is not reversed, Defendant's actions will have resulted in a permanent taking of Plaintiff's business and a substantial loss of Plaintiffs' investments.

70. Defendant's actions were positive, aggressive, illegitimate, unlawful, unreasonable, and taken without constitutional, statutory, or regulatory authority.

71. Defendant's actions reveal a final decision and action, and Plaintiff's only recourse is to seek judicial redress.

72. Defendant's actions have resulted in Plaintiffs being unable to honor Plaintiff CGBG's contracts without being persecuted and prosecuted for alleged violations of the North Myrtle Beach City Ordinance 5-24.

73. Plaintiff invested into their business, purchased business assets, purchased business licenses, and operated in good faith with the specific intent to operate a needed service business within the City of North Myrtle Beach, in accordance with Defendant's ordinances.

74. Defendant's actions have severely and economically damaged Plaintiffs, chilled the value of Plaintiffs' business to both customers and potential purchasers, and have resulted in the taking of Plaintiffs' business and property interests in violation of the South Carolina Constitution.

75. As a result of Defendant's action, a portion of Plaintiffs' Real Property remains economically unusable, or unusable for an activity that is otherwise specifically allowed under Defendant's ordinances.

76. The taking inflicted upon Plaintiffs is based upon an illegal and illegitimate governmental purpose, and therefore Defendant's actions were taken in bad faith and are unreasonable as a matter of law.

77. Plaintiffs are informed and believe that they are entitled to judgment against the Defendant for a temporary or permanent taking, upon such terms and in such amount as will be full determined after a trial of this case.

## FOR A THRID CAUSE OF ACTION

(Violation of Privileges and Immunities Clause under the 14th Amendment to the United States Constitution and the S.C. Constitution Art. I, 3)

78. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it was repeated verbatim herein.

79. The Fourteenth Amendment to the United States Constitution, in relevant part provides expressly that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws."

80. Article I, Section 3 of the South Carolina Constitution expressly states that "[t]he privileges and immunities of citizens of this State and of the United States under this constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws."

81. Defendant's actions intentionally and flagrantly targeted Plaintiffs by enacting an amendment to North Myrtle Beach City Ordinance 5-24 in order to render Plaintiffs' lawful and existing business practices unlawful, without establishing any amortization period during which Plaintiffs could recover their business investment.

82. Plaintiffs are informed and believe that City, by and through its Council and officials, have unlawfully targeted Plaintiffs' business and sought to impose an unlawful monopoly on the rentals of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches that are located within the jurisdictional limits of the City of North Myrtle Beach.

83. Plaintiffs are informed and believe that the actions of Defendant City are "state" actions within the meaning and prohibitions of the Fourteenth Amendment to the to the United States Constitution.

84. Plaintiffs are informed and believe that they are entitled to inquiry by this Court and a declaration that Defendant City has violated Plaintiffs' privileges and immunities as guaranteed to them under the Fourteenth Amendment to the United States Constitution and Article I, Section 3 of the South Carolina Constitution.

85. Plaintiffs have been substantially injured, and Plaintiffs are entitled to a judgment against Defendant for its actual damages suffered as a result of the wrongs committed by Defendant.

86. Plaintiffs are entitled to an award of attorney fees and costs related to this action pursuant to S.C. Code  15-77-300 and 15-53-100.

**FOR A FOURTH CAUSE OF ACTION**

(Violation of Contracts Clause under Article 1, Section 10 of the United States Constitution, and the S.C. Constitution Art. I, 4)

87. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it was repeated verbatim herein.

88. Article 1, Section 10 of the United States Constitution, in relevant part provides expressly that "No state shall pass any Law impairing the obligation of contracts."

89. Article I, Section 4 of the South Carolina Constitution expressly states that "No bill attainder, ex post facto law, law impairing the obligation of contracts, nor law granting any title of nobility or hereditary emolument, shall be passed, and no conviction shall work corruption of blood or forfeiture of estate."

90. Defendant's actions intentionally and flagrantly targeted Plaintiffs by enacting an amendment to North Myrtle Beach City Ordinance 5-24 in order to render Plaintiffs' existing contracts and existing business practices unlawful, without establishing any amortization period during which Plaintiffs could recover their business investment.

91. Plaintiffs had lawfully valid and enforceable contracts in place at the time Defendant amended North Myrtle Beach City Ordinance 5-24, which rendered Plaintiffs existing contracts unlawful.

WWPEM, PLLC
File No. SC-9868-001

92. The targeting of Plaintiffs' business and the adoption of amendments to North Myrtle Beach City Ordinance 5-24 in order to render Plaintiffs' existing contracts and existing business practices unlawful constitute imposition of an ex post facto law and a law impairing the obligations of Plaintiff CGBG's contracts.

93. Plaintiffs are informed and believe that they are entitled to inquiry by this Court and a declaration that Defendant City has violated Plaintiffs' rights afforded under the Contracts Clauses of both the United States Constitution and the Constitution of South Carolina.

94. Plaintiffs have been substantially injured, and Plaintiffs are entitled to a judgment against Defendant for its actual damages suffered as a result of the wrongs committed by Defendant.

95. Plaintiffs are entitled to an award of attorney fees and costs related to this action pursuant to S.C. Code  15-77-300 and 15-53-100.

## FOR A FIFTH CAUSE OF ACTION

(Federal Declaratory Judgment Act)

96. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it was repeated verbatim herein.

97. Plaintiffs are interested parties who have standing pursuant to 28 U.S.C § 2201 to seek declaratory judgment for the purposes of declaring the rights, status, interests of the parties hereto.

98. There exists a controversy concerning the legal rights, status, and interests of the parties hereto and Plaintiffs herein would request that the Court entertain jurisdiction for the purposes of resolving the conflicts and issues in dispute between the parties hereto.

99. Plaintiffs assert and allege that North Myrtle Beach City Ordinance 5-14 is:
    a. Unconstitutional for violations of the contracts clause, privileges and immunities clause, and other particulars which will be shown at the trial of this action;
    b. Is in violation of the Sherman Antitrust Act and Clayton Act; and

    c. That the Ordinance constitutes a regulatory taking by the City of North Myrtle Beach;

100. Plaintiffs assert and allege that North Myrtle Beach City Ordinance 5-24 is:

    a. Unconstitutional for violations of the contracts clause, privileges and immunities clause, and other particulars which will be shown at the trial of this action;

    b. Is in violation of the Sherman Antitrust Act and Clayton Act; and

    c. That the Ordinance constitutes a regulatory taking by the City of North Myrtle Beach;

101. Plaintiffs assert and allege that Defendant, by and through its Council and official, has mishandled accommodations and hospitality taxes remitted by Plaintiffs and others by comingling the funds with Defendant City's general fund, in violation of the express provisions of SC Code §6-1-520(B) and SC Code §6-1-720.

102. Plaintiffs are informed and believe that the provisions of North Myrtle Beach City Ordinances 5-14 and 5-24 that purport to create a monopolistic enterprise run by the Defendant are inconsistent with the Constitution and general laws of the United States and the State of South Carolina, and are therefore invalid. See Hospitality Assoc. v. Town of Hilton Head, 464 S.E.2d 113 (1995).

103. Plaintiffs are interested parties who need the Court to declare the nature of the parties' respective rights, interests, and duties of the parties hereto with respect to the said Ordinances and mishandling of tax funds by Defendant.

## FOR A SIXTH CAUSE OF ACTION
(Violation of South Carolina Antitrust Act)

104. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it were repeated verbatim herein.

105. The South Carolina Legislature enacted in Title 39, Chapter 3 laws to prohibit monopolistic practices and restraints on trade.

106. SC Code §39-3-110 provides expressly, and in relevant part, " A "monopoly" as thus defined includes not merely such combinations by and between two or more persons, firms or corporations acting for themselves, but all aggregations, amalgamations,

affiliations, consolidations or incorporations of capital, skill, credit, assets, property, custom, trade or other valuable thing or possession, whether effected by the ordinary methods of partnership, by actual union under the legal form of a corporation, or by the purchase, acquisition or control of shares or certificates of stocks or bonds or other corporate property or franchises and all corporations or partnerships that have been or may be created by the consolidation or amalgamation of the separate capital, stock, bonds, assets, credit, properties, custom, trade or corporate or firm belongings of two or more firms, corporations or companies are especially declared to constitute monopolies within the meaning of this article, if so created or entered into for any one or more of the purposes named in this article.

107. SC Code §39-3-120 provides expressly "A monopoly is declared to be unlawful and against public policy and all persons engaged therein shall be guilty of a conspiracy to defraud and shall be subject to the penalties prescribed in this article."

108. Upon information and belief, South Carolina Courts should analyze single firm violations of §39-3-120 under the same framework as a §2 violation of the Sherman Antitrust Act.

109. Defendant City cannot show and establish that it is engaging exclusively in the rentals of beach chairs and umbrellas, and sale of concessions, pursuant to a clearly expressed state policy, as the South Carolina legislature has never clearly articulated and affirmatively expressed a state policy to authorize the Defendant's monopolistic practices and restraints on trade.

110. Plaintiffs are informed and believe that City, by and through its Council and officials, has unlawfully sought to impose an unlawful monopoly on the Gear of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches that are located within the jurisdictional limits of the City of North Myrtle Beach.

111. Plaintiffs are informed and believe that they are entitled to inquiry by this Court and a declaration that Defendant City has violated the provisions of the Title 39, Chapter 3 of the Code of Laws of South Carolina, and for an award of injunctive relief, actual damages, statutory damages, attorney's fees, and the costs incurred in both this action and in the defense of criminal charges levied against Plaintiff's D. Calhoun and J. Calhoun.

112. Plaintiffs are further informed and believe that they are entitled to injunctive relief in the form of this Court's Order to cease and desist from further monopolistic activities.

## FOR A SEVENTH CAUSE OF ACTION

(Defamation, Libel, Libel per se, Slander and Slander per se)

113. Each and every allegation set forth in this Complaint is re-alleged and incorporated into this cause of action as if it were repeated verbatim herein.

114. In issuing repeated citations to Plaintiffs D. Calhoun and J. Calhoun wherein it is alleged that Plaintiffs have repeatedly violated valid and enforceable laws and making commentary about Plaintiffs' unlawful conduct, Defendant City and its officials, officers and agents, have published unprivileged and false and defamatory statements concerning Plaintiffs, including the publication to members of the press; (3) published the false statements under circumstance where the falsity of the statements was known to Defendant City's officials, officers and agents, or were made with reckless disregard for the truthfulness of the statements; (4) and have caused reputational damages, special harm attributable to the statements and publications.

115. Defendant City's statements, and those of its officials, officers and agents were statements that tend to harm the reputations of Plaintiffs as to lower them in the estimation of the community and to deter third persons from associating or dealing with Plaintiffs and their business.

116. Defendant City's statements, and those of some, however not all, of its officials, officers and agents were made with actual malice against Plaintiffs.

117. Upon information and belief, the unsubstantiated, written allegations by the Defendant City's statements, and those of some, however not all, of its officials, were false and made with the expectation and intention by the Defendant that such allegations would harm Plaintiffs' reputation, and deter third persons from associating or dealing with the Plaintiffs.

118. Plaintiffs have been specially harmed, and damages have been incurred, including but not limited to, actual and future damages to reputation.

WWPEM, PLLC
File No. SC-9868-001

119. Plaintiffs are informed and believe that Plaintiffs are entitled to recover consequential, nominal, actual, and special damages, costs, attorney fees, and punitive damages from Defendant upon a finding of libel, libel per se, slander, and / or slander per se.

### **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray for the following relief:

A. That a jury be empaneled to decide all contested issues of act;

B. That the court issue and order a temporary injunction, enjoining Defendant from taking any actions with respect to enforcement of the provisions of North Myrtle Beach City Ordinances 5-14 and 5-24 that would negatively affect or impact Plaintiffs' business;

C. That Plaintiffs have and recover judgment against the Defendant and an award of Plaintiffs' statutory, nominal, actual and consequential damages as will be proven during the trial of this case, the costs of this action including an award of reasonable attorney fees and costs and an award of pre-judgment interests at the legal rate; and

D. That Plaintiffs have and recover such other and further relief deemed just and proper by the Court.

# [Signature Page to Follow]

Respectfully submitted this 11th day of July 2022.

**WRIGHT, WORLEY, POPE,**
**EKSTER & MOSS, PLLC**
*Attorneys for the Plaintiff*

*s/ Kenneth R. Moss*
*s/ George N. Spirakis*

Kenneth R. Moss, FID # 10754
George N. Spirakis, FID #5398
628A Sea Mountain Highway
North Myrtle Beach, SC 29582
tel: (843) 281-9901 fax: (843) 281-9903
Email: KennethMoss@wwpemlaw.com
          GeorgeSpirakis@wwpemlaw.com

**ROBERT E. LEE, LLC**
*Attorney for the Plaintiff*

*s/ Robert E. Lee*

Robert E. Lee, FID # 5509
P.O. Box 1096
Marion, SC 29571
tel: (843) 423-1313  fax: (843) 423-1397
Email: rel@rellawfirm.com