IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
Case No. 4:22-cv-02198

| | |
|---|---|
| Cherry Grove Beach Gear, LLC, )<br>Derek Calhoun, and )<br>Jacqueline Calhoun, )<br>    )<br>Plaintiff, )<br>    )<br>    )<br>vs. )<br>    )<br>City of North Myrtle Beach, )<br>    )<br>Defendant. )<br>_____ ) | **PLAINTIFFS' REPLY<br>BY WAY OF MEMORANDUM<br>OPPOSITION OF DEFENDANT'S<br>MOTION TO DISMISS** |

Plaintiffs, by and through their attorneys, submit the within reply memorandum in opposition to Defendant's Motion to Dismiss (Docket Entry 21).

## STANDARD OF REVIEW

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Ashcroft v. Iqbal, 129 S.Ct. 1937, 173 L.Ed2d 868, 556 U.S. 662, 77 USLW 4387 (2009). *"[D]etailed factual allegations are not required…*" Id. (citing Twombly, 550 U.S., at 555, 127 S.Ct. 1955). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. "In general, a motion to dismiss for failure to state a claim should not be granted unless it appears certain that the plaintiff can prove no set of facts which would support its claim and would entitle it to relief. In considering a motion to dismiss, the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff. See, e.g., De Sole v. United States, 947 F.2d 1169, 1171

(4th Cir.1991)." Mylan Laboratories, Inc. v. Matkari, 7 F.3d 1130 (4th Cir. 1993). "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."..." King v. Rubenstein, 825 F.3d 206 (4th Cir. 2016).

## BACKGROUND

"In or about 2019, Plaintiffs, along with Plaintiff J. Calhoun's father Ronald Johnson, organized and began operation of their business through which Plaintiffs purchase, sell, and lease beach chairs, beach umbrellas, coolers, floats, and accessories for use on the beaches located within the City of North Myrtle Beach. Plaintiffs' business services also include delivery, set up on the beach and the taking down and removal of the chairs and accessories. Plaintiffs applied for and were issued an initial Business License by the City to operate Plaintiffs' business within the jurisdictional limits of the City of North Myrtle Beach. Plaintiffs thereafter applied for and renewed Plaintiff CGBG's Business License for two additional and consecutive years. However, the terms, conditions, requirements, and prohibitions of North Myrtle Beach City Ordinance 5-14 did not prohibit the operations of Plaintiffs' business. Plaintiffs were advised by officials of Defendant City that the only concern was that of the safety of putting up the umbrellas and that there was no issue presented with Plaintiffs setting up on the Beach. Defendant City thereafter reissued a North Myrtle Beach Business License to CGBG. Plaintiffs have operated their business lawfully within the City of North Myrtle Beach, since being issued a Business License, taking care to adhere to City's ordinances concerning the location of where beach chairs, umbrellas and accessories can be set up on the beach and the daily curfew by which the items must be removed from the beaches. Plaintiffs have also provided services and leased beach chairs, beach umbrellas and beach wares to users in area beaches, including Sunset Beach, NC. In the operations of their

business, Plaintiff CGBG has entered into annual contracts with both homeowners' associations and individuals for the provisions of beach chairs, beach umbrellas and beach wares. In the operations of their business, Plaintiffs have employed electronic means of advertising upon social media platforms, reservations, contracting and collection of payments such that Plaintiffs can transact their business with purported vacationers and locals in an on-line platform of the internet. The rental of beach chairs and beach umbrellas to vacationers and residents and the sale of beverages and concessions on the beaches located within the jurisdictional limits of the City of North Myrtle Beach are activities of interstate commerce." (Compl. ¶¶20-28).

### A. Sherman Antitrust Act

Plaintiffs clearly have sufficiently plead facts which would entitle them to relief under the Sherman Antitrust Act. Plaintiffs have alleged that the Defendant will not be able to avail itself of the "state-action" immunity doctrine and thus will be liable for a violation of Section 2 of the Sherman Act. (Compl. ¶47). Furthermore, Defendant's argument that Plaintiffs have failed to allege a relevant market and therefore the cause of action should be dismissed is misguided and wholly unpersuasive. Defendant in no way has shown or can show that the Plaintiffs are not entitled to relief under the allegations contained in the Complaint and therefore its Motion to Dismiss as to the Antitrust cause of action must be denied.

The Defendant has not shown and will not be able to show it is entitled to immunity under the "state-action" doctrine set forth in Parker v. Brown, 317 U.S. 341 (1943). In order to avail itself of the "state-action" immunity, the Defendant will have to show that it is "engaging in the challenged activity pursuant to a clearly expressed state policy" Town of Hallie vs. City of Eau Claire, 471 U.S. 34, 85 L.Ed.2d 24 (185). Specifically, "to obtain exemption, municipalities must demonstrate that their anticompetitive activities were authorized by the State 'pursuant to state

policy to displace competition with regulation or monopoly public service." Id. at 39. Further articulated in the Town of Hallie, *Id*. "municipal governments general authority to govern local affairs, [does] not constitute a 'clear articulation' of a state policy to authorize anticompetitive conduct..." Id at 40. (citing "Community Communications Co. v. Boulder, 455 U.S. 40, 102 S.Ct. 835, 70 L.Ed.2d 810 (1982). If the state policy does not clearly articulate a policy to displace competition, it is sufficient that the anticompetitive activity complained of is the foreseeable result of the state policy and the anticompetitive activity would logically result from the state policy. See Id. It is not, however, sufficient that any anticompetitive activity is foreseeable from the state policy, rather it needs to be foreseeable that the anticompetitive activity complained of logically would result from the state policy. See Id. "'The cardinal rule of statutory construction is to ascertain and effectuate the intent of the Legislature.'..." Eagle Container v. County of Newberry, 622 S.E.2d 733, 366 S.C. 611 (S.C. 2005). "What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will." Id. Furthermore, when looking at the canons of statutory construction Courts apply the rule that the specific terms of a statutory scheme control over general terms. See. Lara-Aguilar v. Sessions, 889 F.3d 134 (4th Cir. 2018).

Neither of the South Carolina statutes cited by Defendant clearly articulate any state policy to displace competition. The fundamental prerequisite of the "state-action" immunity, as crafted by the Supreme Court of the United States, is therefore not present and Defendant will not be able to enjoy state-action immunity in this case.

Defendant cites the general statute S.C. Code Ann. § 5-7-30 for authority to grant franchises and make charges for the use of public beaches. Again, "a municipal government's general authority to govern local affairs does not constitute a clearly expressed articulation of a state policy to displace competition. Id. Furthermore, the more specific code section in the statutory

Page 4

scheme, S.C. Code Ann. § 5-7-145, controls this Courts analysis when analyzing if the Defendant is acting pursuant to a clearly articulated state policy to displace competition articulated by the legislature. It is clear from the <u>Community Communications Co. v. Boulder</u> case and the rules of statutory construction that the Defendant may not rely on S.C. Code Ann. §5-7-30 as a clearly articulated state policy to displace competition when there is clearly articulated and expressed more specific state policy in the statutory scheme set forth in S.C. Code Ann. § 5-7-145. Arguendo, if Defendant could rely on S.C. Code Ann. §5-7-30, Defendant cannot show that a municipal run monopoly on the rental and set up of beach wares upon the public beaches is a foreseeable anticompetitive activity that would logically result from the ability to grant franchises to third party private companies and to charge for the use of public beaches. Thus, Defendant's reliance on the broad powers granted to municipalities under S.C. Code Ann. § 5-7-30 for state-action immunity is misguided and unavailing.

Defendant also cites S.C. Code Ann. § 5-7-145 as authority for a clearly articulated policy to displace competition. Defendant argues that Defendant's monopolistic enterprise is a foreseeable anticompetitive activity. But in fact, the plain language of the statute precludes any notion that the Defendant's anticompetitive practices are a foreseeable result that would logically result from a reading of S.C. Code Ann. § 5-7-145, which is set forth immediately below.

> S.C. Code Ann. § 5-7-145. "**If the municipality elects to provide the services by an agreement with a private beach safety company**, the following conditions apply: (1) the municipality **shall follow the procedures of the State Procurement Code**, as found in Chapter 35 of Title 11, or the procedures of the municipal procurement code, in the awarding of contracts with private beach safety companies; (2) **the agreement** between the municipality and private beach safety company **may last no longer than seven years**; (3) the municipality **may grant the exclusive right to the beach safety company** to rent only the beach equipment and to sell only the items to the public on the beach that are allowed by the municipality on the effective date of this section; provided, however, that on and after the effective date of this section there shall be no granting of the right to rent any additional tangible items, or to sell any beverages to the public on the beach, or otherwise, unless and until additional personnel are hired for the additional rentals and

additional activities sufficient in number so that employees already employed on the effective date of this section will not be unduly burdened as determined by the appropriate municipal governing body; (4) lifeguard personnel employed by the private beach safety company must be tested and certified as required by the municipality; and (5) the conduct of the limited commercial activities granted to the private beach safety company shall not prevent or interfere in a substantial way with the peaceful, recreational use of the public beach by the general public." (***bold emphasis added***).

Nowhere in S.C. Code Ann. §5-7-145 is it clearly articulated that the displacing of competition can be by the municipality itself. The only provisions statutory provisions that contemplate any policy to displace competition are expressly conditioned upon the Defendant's contracting with a "private beach safety company", for which the contract is competitively procured through lawful means, and the resulting contract cannot last any longer than seven (7) years. Only in those specific circumstances may the Defendant grant an exclusive right to a contracted "private beach safety company" to rent and set up beach equipment on the public beaches. It is indisputable that the Defendant, a South Carolina municipal corporation (Compl. ¶4), is not a "private beach safety company". From the plain reading of the statute, it is completely misguided for the Defendant to contend that Defendant can be the exclusive provider of beach equipment as a foreseeable anticompetitive activity that logically results from S.C. Code Ann. §5-7-145. Further, the Defendant's monopolistic enterprise, which has continued for substantially more than seven (7) years was not competitively procured through a lawful procurement process.

The Defendant, in citing the case of Western Star Hosp. Authority v. City of Richmond, obfuscates the framework in which the court reached the holding that the City of Richmond was acting pursuant to a clearly articulated state policy to displace competition when granting an exclusive franchise. The relevant Virginia statutes in Western Star were analyzed by the Court who found a clearly articulated state policy to displace competition. The Virginia statutes were substantially different from the South Carolina statutory provisions in this case. "Va. Code Ann. §

32.1-111.14. Such 'governing bodies' are empowered to: **prohibit** the operation of EMS vehicles without a city-issued franchise, license, or permit; **limit the number** of EMS vehicles allowed to operate in the city; **fix the charges** for EMS vehicle services..." W. Star Hosp. Auth. Inc. v. City of Richmond, 986 F.3d 354 (4th Cir. 2021). "The Virginia legislature has expressly conferred broad authority on local governing bodies to engage in anticompetitive conduct in the EMS vehicle services market. See Va. Code Ann. § 32.1-111.14(A). A **local government may make it unlawful** to operate EMS vehicles without a permit, control the issuance of permits**, determine where EMS vehicles can and cannot operate**, and fix the prices of EMS vehicle services. Id.

In stark contrast to what was presented to the Court in Western Star, neither S.C. Code Ann. § 5-7-30 or § 5-7-145 confer the power upon the Defendant: to prohibit the rentals and placement of beach equipment without a franchise from the city, to fix the price of beach equipment for rent, and/or to direct when and where beach equipment may be rented. In fact, Western Star exemplifies that the Defendant is not acting pursuant to a clearly articulated state policy to displace competition.

Published opinions of the South Carolina Attorney General further support the Plaintiffs' likelihood of success on the merits. Specifically, in the AG opinion provided for the Town of Salley, the new ordinance stated: "No individual, organization, group or anyone other than the Town of Salley shall be allowed to sell chitlins (fried, boiled or raw) on the day of the Chitlin Strut. Any exceptions to this must be approved by a majority of the town council and mayor." Opinion asking whether the Ordinance of the Town of Salley relating to the Town's annual festival, the "Chitlin Strut", is valid, at Page 1 (South Carolina Office of the Attorney General, 1996). "It is obvious that one of the primary purposes of the Ordinance is to secure revenue for the Festival's operation, the preamble to the Ordinance noting that 'the Chitlin Strut represents a significant

portion of the revenue of the Town of Salley..." Id. "The Ordinance purports to give the Town a monopoly on the sale of chitlins on the day of the Festival, providing that only the Town may sell chitlins on that day unless an exception is provided. When a statute or ordinance authorizes the state or a municipality to engage in anticompetitive conduct, such as this Ordinance does, the issue then becomes whether the state or its political subdivisions are entitled to the so-called "state action" immunity which is afforded to the sovereign." Id at 3.  "Home Rule power alone is not deemed an expression of state policy to permit a municipality to engage in anticompetitive conduct." Id at 8. The AG opined that he was not convinced the broad power conferred on municipalities under S.C. Code Ann. § 5-7-30 clearly articulated a policy to displace competition. See id at 8,9.  If the Town of Salley is subject to a violation of the Sherman Antitrust Act for monopolizing the sale of chitlins on one day in each year, clearly the Defendant's monopolistic practices would constitute a violation.

In no way can Defendant show that Plaintiffs have failed to allege an adequate monopolization claim. Plaintiffs D. Calhoun and J. Calhoun are principals of Plaintiff CGBG. (Compl. ¶¶1-3).  Plaintiffs have alleged that the Defendant City and the City's council never, and certainly at all relevant times hereto, intended to issue any franchise agreement to any third party vendor to provide life-guard or public safety services, and that City's adoption of an ordinance provision that authorizes the entry into a franchise agreement was a sham of an ordinance designed to restrict competitive business practices and monopolize Defendant City's business in order to maximize profits available to Defendant City. (Compl. ¶16). Plaintiffs have clearly alleged that Defendant has sought to impose an unlawful monopoly upon the entirety of the public beaches within its jurisdictional limits. (Compl. ¶52). Further, Plaintiffs alleged that Defendant is the exclusive dealer of beach wares including set up and delivery upon the entirety of the public

beaches, simply put, a one hundred (100%) percent market share. (Compl. ¶49). Plaintiffs plead that Defendant never intended to and at all times relevant has not issued any franchises for the rental of beach wares and have engaged exclusively in said practices in which the Defendant derives between 2.5 and 3 million dollars annually. (Compl. ¶¶16-18). Finally, Plaintiffs specifically alleged that Defendant amended ordinance 5-24 to outlaw Plaintiffs' business practices. (Compl. ¶42). Plaintiffs have sufficiently alleged a monopolization claim by stating that Defendant engages in the exclusive practice of renting and leasing beach wares upon the entirety of public beaches within its jurisdictional limits and that the Defendant took affirmative steps to change Defendant's Ordinance 5-24 to outlaw Plaintiffs' business practices which were interfering with Defendants monopoly.

Plaintiffs have clearly and sufficiently alleged a violation of Section 2 of the Sherman antitrust act in which they would be entitled to relief. In no way can the Defendant show it is acting pursuant to a clearly articulated state policy to displace competition in rentals and set up of beach equipment. Defendant's attempt to distract this Court by asserting the financial motivations and consequences of competition upon Defendant's monopolistic practices is wholly irrelevant to a Sherman Antitrust analysis. Thus, Defendant's motion to dismiss as the to the Sherman Antitrust cause of action should be denied.

### B. Contracts Clause

Plaintiffs have clearly alleged sufficient facts that would entitle them to relief for a Defendant's violation of the Contracts Clause Article 1, Section 10 of the Constitution of the United States and the Constitution of the State of South Carolina, Article I, Section 4. Defendant's argument is based largely upon the fact that Plaintiffs' business practices of set up delivery have always been unlawful and therefore the Defendant, when amending its Ordinance 5-24 did not

infringe upon Plaintiffs' contracts. This argument is flawed, incredible and simply untruthful. Defendant's counsel, in open Court, admitted in response to the Court's inquiry that there were no express provisions in Defendant's Ordinance 5-14 that prohibited the delivery and set up of beach equipment upon the beaches. Accepting Defendant's assertion requires the Court to read into Defendant's Ordinance 5-14 terms and prohibits that are just not there.

Regardless of Defendant's assertions, Plaintiffs' business practices did not violate the provisions of either Defendant's Ordinance 5-14 or 5-24 prior to Defendant adopting amendments to Ordinance 5-24 in June of this year. Plaintiffs had valid and enforceable contracts that Defendant infringed upon by amending the provisions of Defendant's Ordinance 5-24 and thereafter seeking immediately to enforce the provisions upon Plaintiffs. Therefore, Defendant's motion to dismiss relying on the fact that Plaintiffs' business practices have always been unlawful should be denied.

Plaintiffs have held a North Myrtle Beach Business License for three consecutive years and have provided beach equipment rentals including setting up said equipment on beaches within Defendant's jurisdictional limits. Defendant never, prior to adopting amendments to Ordinance 5-24, cited Plaintiffs for any violation of either Ordinance 5-14 or 5-24, notwithstanding that Defendant's agents and officers were aware of and objected to Plaintiff's business practices. On the other hand, Plaintiffs did enter into annual contracts requiring their performance of the very services that the Defendant now seeks to prohibit. (Compl. ¶91).

While Defendant argues set up and delivery was unlawful under 5-14 at the time Plaintiffs entered into its contracts, the express text of Ordinance 5-14 and Defendant's failure to issue any citations for over two-years of a disputed business practice are revealing. Defendant adopted amendments to Ordinance 5-24 to regulate set up and delivery of beach wares simply because

Defendant's City Attorney and City Council knew that Plaintiffs' business practices do not violate Ordinance 5-14. Logically, if Plaintiff's business practices did violate the provisions of Ordinance 5-14, an amendment to Ordinance 5-24 would not have been necessary at all to stop Plaintiffs from invading Defendant's monopolistic and unlawful enterprise.

Plaintiffs relied upon the express language of Ordinances 5-14 and 5-24 when entering into contracts. Now, after Defendant's amendment of Ordinance 5-24, Plaintiffs are faced with the dilemma of criminal prosecution of daily citations or claims that they have breached their contracts with customers who seek to utilize Plaintiffs' services. Plaintiffs have clearly had their valid and enforceable contracts substantially impaired by Defendant's adoption of amendments of Ordinance 5-24 without any amortized or sunset provisions that would enable Plaintiff to perform under its contracts.

Plaintiffs have clearly and sufficiently alleged a violation of the contracts clause which would entitle them to relief. Under the cardinal rule of statutory construction and the plain reading of the text Defendant's Ordinances 5-14 and 5-24, Defendant cannot show that Plaintiffs' business practices of setting up and delivering beach wares upon the public beaches was unlawful prior to the amendment of Ordinance 5-24 that prompted this lawsuit. Defendant's own conduct and citation history clearly shows this. Therefore, Plaintiffs are entitled to relief based upon the allegations contained in the Complaint and Defendant's motion to dismiss as to the Contracts Clause cause of action must be denied.

### C. Regulatory Taking

Again, Plaintiffs have clearly alleged sufficient facts in the Complaint that would entitle them to relief under the Regulatory Taking cause of action despite Defendant's untruthful assertion

that Plaintiffs' business practices have always been unlawful. Defendant's assertion fails and so should its motion to dismiss as to this cause of action.

The court looks to three factors when analyzing a taking: (1) "[t]he economic impact of the regulation on the claimant," (2) "the extent to which the regulation has interfered with distinct investment-backed expectations," and (3) "the character of the governmental action," Penn Cent., 438 U.S. at 124, 98 S.Ct. 2646. While these factors provide "important guideposts," "[t]he Takings Clause requires careful examination and weighing of all the relevant circumstances." Palazzolo, 533 U.S. at 634, 636, 121 S.Ct. 2448 (O'Connor, J., concurring); see also Tahoe–Sierra, 535 U.S. at 321, 122 S.Ct. 1465 (whether a taking has occurred "depends upon the particular circumstances of the case"); Yee v. City of Escondido, 503 U.S. 519, 523, 112 S.Ct. 1522, 118 L.Ed.2d 153 (1992) (regulatory takings claims "entail[ ] complex factual assessments"). Lost Tree Vill. Corp. v. United States, 115 Fed. Cl. 219, 228 (2014) (emphasis added). 64. Even if the regulation falls short of eliminating all economically beneficial use, a taking nonetheless may have occurred, Palazzolo v. Rhode Island, 533 U.S. 606 at 617, (2001). "The first two factors—economic effects and investment-backed expectations— are '[p]rimary among those factors.'" Clayland Farm, 987 F.3d at 353 (quoting Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 538–39 (2005)).

Defendant fails to consider the fact that Plaintiffs' business of renting beach equipment goes hand in hand with delivery and set up.  The convenience of delivery and set up is what the customers want. Plaintiffs have alleged that the amendment "jeopardizes the sustainability of Plaintiffs' businesses [sic] and the rights of Plaintiffs with respect to property ownership," and that "Plaintiffs' business cannot be economically viable in light of" the amendment. (Compl. ¶¶ 67, 68). Plaintiffs further alleged that "Defendant's actions have severely and economically damaged Plaintiffs, chilled the value of Plaintiffs' business to both customers and potential purchasers…" (Compl. ¶74).  These are not bare legal conclusions as Defendant would argue but instead sufficient

factual allegations that the amendment has jeopardized Plaintiff's ability to stay in business and that without set up and delivery their business may very well not be economically viable. Plaintiffs have sufficiently alleged a diminution in value to their business which will be further fleshed out as to what degree throughout discovery and litigation.

The same reasoning in the preceding paragraph applies to the second factor, namely the extent which the regulation has interfered with investment-backed expectations. Plaintiffs have pled the amendment to Ordinance 5-24 jeopardizes the sustainability of their business and makes it no longer economically viable to carry on. (Compl. ¶¶67-68). "Valid contracts are property." Lynch v. United States, 292 U.S. 571, 579 (1934). When governmental action does appropriate a contract for its own use there is a taking. See. Connolly v. Pension Benefit Guar. Corp., 475 U.S. 211, 224 (1986). By amending Defendant's Ordinance 5-24, Defendant's City Council ensured that no company engaged in beach rentals would be able to deliver and setup on the beach. It is easily deducible that Defendant, by enacting the amendments to Defendant's Ordinance 5-24, has essentially appropriated each of Plaintiff CGBGs' valid contracts that include delivery and set up. After the amendments to Defendant's Ordinance 5-24, the Defendant is the only business that can provide the services. For the purposes of a motion to dismiss, Plaintiffs have clearly alleged sufficient facts that would entitle them to relief and therefore Defendant's Motion to Dismiss as to the Regulatory Taking claim must be denied at this early stage in the litigation.

### D. Privileges and Immunities Clause

Plaintiff Derek and Jacqueline Calhoun have properly and sufficiently plead a claim for which relief of a violation of the Privileges and Immunities Clause may be granted. While Plaintiff Cherry Grove Beach Gear, LLC may not have standing to bring this cause of action as an entity, Plaintiffs Derek and Jacqueline Calhoun do have standing. Plaintiffs Derek and Jacqueline

Calhoun are principals of Plaintiff Cherry Grove Beach Gear, LLC and organized the entity and their business for the purpose of transacting their business within the City of North Myrtle Beach. (Compl. ¶20). The Fourteenth Amendment to the United States Constitution, in relevant part provides expressly that "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction the equal protection of the laws." Article I, Section 3 of the South Carolina Constitution expressly states that "[t]he privileges and immunities of citizens of this State and of the United States under this constitution shall not be abridged, nor shall any person be deprived of life, liberty, or property without due process of law, nor shall any person be denied the equal protection of the laws." State discrimination in favor of residents of one of its municipalities implicates the clause. See. United Building & Constr. Trades Council v. Mayor of Camden, 465 U.S. 208 (1984). In Twining v. New Jersey the Supreme Court noted that among the rights and privileges afforded to a national citizen is the right to enter public land and the right to engage in interstate commerce. 211 U.S. 78, 97 (1908).

The Plaintiffs have plead "Defendant's actions intentionally and flagrantly targeted Plaintiffs by enacting an amendment to North Myrtle Beach City Ordinance 5-24 in order to render Plaintiffs' lawful and existing business practices unlawful…" (Compl. ¶81). Plaintiffs further plead "…[The] City, by and through its Council and officials, have unlawfully targeted Plaintiffs' business and sought to impose an unlawful monopoly on the rentals of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches that are located within the jurisdictional limits of the City of North Myrtle Beach." (Compl. ¶82). Plaintiffs have alleged sufficient facts to support the claim that Defendant has specifically infringed on their right to enter and conduct business on public lands. Furthermore, by specifically outlawing set up and delivery by amending the text of 5-24 has infringed on Plaintiffs' right to engage in interstate commerce. It is logical that most of Plaintiffs' business

involving rental of beach wares along with set up and delivery come from out of state tourists visiting the North Myrtle Beach area. Furthermore, Defendant by enacting the amendment to 5-24 has discriminated on the other municipalities' citizens of the State of South Carolina by outlawing a business practice on public beaches which is a lawful privilege other citizens of the State of South Carolina enjoy.

In sum, Plaintiffs Derek and Jacqueline Calhoun clearly have standing to bring a claim for violation of the Privileges and Immunities Clause against the Defendant. Said Plaintiffs have sufficiently plead facts which would entitle them to relief under the Privileges and Immunities Clause and therefore Defendant' Motion to Dismiss must be denied.

### E. Declaratory Judgment

Plaintiffs are interested parties who have standing pursuant to 28 U.S.C § 2201 to seek declaratory judgment for the purposes of declaring the rights, status, interests of the parties hereto. (Compl. ¶¶96-103). Plaintiffs have sufficiently plead a cause of action for Declaratory Judgment despite Defendants assertions. Plaintiffs, as explained throughout this memorandum have sufficiently alleged a violation of the forgoing causes of action and thus are entitled to a declaration by this Court concerning the respective parties' rights and interests in said violations. Plaintiffs have sufficiently plead facts which would entitle this Court to declare the rights and interests of the parties hereto with respect to the provisions of 5-14 and 5-24 being "inconsistent with the Constitution and general laws of the United States and the State of South Carolina and are therefore invalid." (Compl. ¶102).

The Plaintiffs have further alleged that Defendant has mishandled and comingled hospitality and accommodations tax funds, in violation of the express provisions of SC Code §6-1-520(B) and SC Code §6-1-720. (Compl. ¶¶32-33, ¶101). Plaintiffs are entitled to this Court declaring the rights of the parties hereto under the Federal Declaratory Judgment Act as the alleged commingling and mishandling of funds, when taken as true, is directly relevant to the municipal run monopoly on beach

ware rentals, if any of said tax dollars were mishandled to fund said monopoly. The Defendant is misguided in stating that this alleged mishandling of restricted tax funds is not relevant to this action.

It is clear that the Plaintiffs have sufficiently and properly alleged allegations which would entitle this Court to entertain a adjudicate claims under the Federal Declaratory Judgment claim. Thus, Defendant's Motion to Dismiss must be denied.

### F. SC Antitrust and Defamation Claim

At this point in the action Plaintiffs have appropriately plead and alleged adequate facts that would entitle them to relief under these claims. Defendant has not filed a responsive pleading and has not denied or admitted any of the allegations contained in Plaintiffs' Complaint. When this Court takes the allegations in the Complaint under these causes of action as true, Plaintiffs have stated a claim for relief at this extremely early stage in the action. As discovery develops Defendant may very well be entitled to Tort Claims Act immunity but at this pre-discovery juncture Plaintiff it is too early to know if Defendant did not make any actionable defamatory statements regarding the Plaintiffs. In addition, Plaintiffs have sufficiently alleged that facts that the Defendant has violated the S.C. Antirust Act. Defendant's responsive pleading may render the Plaintiffs' claims under the S.C. Antitrust Act meritless. However, unless and until Defendant admits that Plaintiffs' business affects interstate commerce, it would be premature to assert that the S.C. Antitrust Act is inapplicable. Therefore, Defendant's Motion to Dismiss as to these claims should be denied at this early stage in the litigation because Plaintiffs have adequately alleged facts that when taken as true would entitle them to relief.

## CONCLUSION

In summary and based on the foregoing, the Plaintiffs have clearly and sufficiently alleged facts which would entitle them to relief on their claims that: the Defendant has violated the Sherman Antitrust Act; the Defendant has violated Plaintiffs 'contract rights protected under

Article 1, Section 10 of the Constitution of the United States and the Constitution of the State of South Carolina, Article I, Section 4; that the Defendant has undertaken an unconstitutional taking under the Penn Central Framework; that Defendant has violated the Privileges and Immunities Clause; and that Plaintiffs are entitled to this Court's Declaratory Judgment with respect of the rights and interests of the parties hereto. Defendant has not and will not be able to show that Plaintiffs under no set of facts are entitled to relief under the above stated claims and therefore their run of the mill Motion to Dismiss must be denied.

Respectfully submitted this 7th day of October 2022.

**WRIGHT, WORLEY, POPE,**
**EKSTER & MOSS, PLLC**
*Attorneys for the Plaintiffs*

*s/ Kenneth R. Moss*

Kenneth R. Moss, FID # 10754
George N. Spirakis, FID #5398
628A Sea Mountain Highway
North Myrtle Beach, SC 29582
tel: (843) 281-9901 fax: (843) 281-9903
Email: KennethMoss@wwpemlaw.com
          GeorgeSpirakis@wwpemlaw.com

**ROBERT E. LEE, LLC**
*Attorney for the Plaintiffs*

*s/ Robert E. Lee*

Robert E. Lee, FID # 5509
P.O. Box 1096
Marion, SC 29571
tel: (843) 423-1313 fax: (843) 423-1397
Email: rel@rellawfirm.com