UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| Cherry Grove Beach Gear, LLC, Derek Calhoun, and Jacqueline Calhoun, </br></br>    Plaintiffs, </br></br>v. </br></br>City of North Myrtle Beach, </br></br>    Defendant. | Civil Action No.: 4:22-cv-02198-RBH </br></br></br></br></br>**ORDER** |

Plaintiffs Derek and Jacqueline Calhoun and Cherry Grove Beach Gear, LLC ("CGBG") filed this suit alleging Defendant City of North Myrtle Beach ("the City") has sought to monopolize the rental of beach wares on the City's beaches. The City has filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21. The Court denies in part and grants in part the motion for the reasons herein.[1]

**Legal Standard**

"A motion to dismiss pursuant to Rule 12(b)(6) tests the sufficiency of the claims pled in a complaint." *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 211 (4th Cir. 2019). To survive the motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *R.A. v. Johnson*, 36 F.4th 537, 544 (4th Cir. 2022) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "In other words, '[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Strickland*

---

[1] The Court decides the motion without a hearing pursuant to Local Civil Rule 7.08 (D.S.C.). Adhering to the Rule 12(b)(6) standard, the Court's rulings are based entirely on the allegations in Plaintiffs' complaint. The Court notes it denied Plaintiffs' Rule 65 motion for a preliminary injunction by applying a different standard than that applied to the City's instant Rule 12(b)(6) motion to dismiss.

*v. United States*, 32 F.4th 311, 347 (4th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 679).

## Background[2]

In 2019, the Calhouns began operating CGBG, a business that purchases, sells, and leases beach chairs and umbrellas, coolers, floats, and accessories for use on beaches located within the City. Complaint [ECF No. 1] at ¶¶ 1–3, 20. These business services also include delivery, set up on the beach, and the taking down and removal of chairs and accessories. *Id.* Plaintiffs transact business with vacationers and locals via the internet. *Id.* at ¶ 27. CGBG also has annual contracts with individuals and homeowners' associations for the provision of beach wares including chairs and umbrellas. *Id.* ¶ 26. CGBG holds a business license issued by the City. *Id.* at ¶ 21.

Historically, the City itself has rented beach chairs/umbrellas and sold beverages/concessions on its beaches, annually deriving between $2.5 to $3 million dollars in gross revenue from the *on-beach* rental and set up of chairs and umbrellas. *Id.* at ¶¶ 17–18. Plaintiffs allege these rentals and sales are activities of interstate commerce. *Id.* at ¶ 28. Their allegations indicate the City has been the almost-exclusive purveyor of such rentals and sales *conducted upon the beach*. *Id.* ¶¶ 17, 49, 109.

Plaintiffs claim the City has unlawfully targeted their business and "sought to impose an unlawful monopoly on the rentals of beach chairs, beach umbrellas and related beach wares on the entirety of the beaches."[3] *Id.* at ¶¶ 52, 69, 81, 82, 90, 92, 110. Plaintiffs challenge two City ordinances: § 5–14 and § 5–24. Ordinance 5–14 was last amended in 2007 and provides in relevant part:

> Upon the public beaches, public waters or any public property

---

[2]     The following allegations are taken from the complaint and are assumed true for purposes of this Order.

[3]     For example, a City police officer told Mr. Calhoun that the City Attorney's "number one priority was to get rid of Plaintiff CGBG," while another officer told Mr. Calhoun that he (the officer) had been instructed to ticket Plaintiffs every day but not make any arrest. Compl. at ¶¶ 36–37. When the complaint was filed, the Calhouns had been ticketed at least eight times. *Id.* at ¶ 38.

>   except as otherwise authorized by city ordinance, no person shall sell, lease or rent any goods, wares or other property except that this provision shall not prohibit the holder of a beach franchise or license from exercising the rights and privileges granted therein, nor shall it prohibit the city from granting to the holder of a beach service franchise or license the right and privilege of selling or renting upon the public beaches or waters such items of personal property as are customarily sold or rented by the holders of such franchises or licenses, nor shall it prohibit city council from authorizing activities of a promotional nature on public property with the consent of council for each occurrence. *Furthermore, this provision shall not prohibit the City of North Myrtle Beach and its authorized employees from selling and or renting goods and wares such as beach umbrellas and chairs and concession items in conjunction with the city providing lifeguard services.*

North Myrtle Beach Code § 5–14(a) (emphasis in original). Ordinance 5–24 was last amended in 2022 and provides in relevant part:

>   (a)   *Findings*. The council of the city has made the following findings:
>     (1)   That the public beach is a public area, which is open and accessible to all persons;
>     (2)   That the public beach is maintained and subjected to reasonable regulation by the city in order to promote the health, safety, welfare and morals of all persons using the beach;
>     (3)   That the public beach provides a unique area for all persons to pursue peaceful relaxation and quiet enjoyment in a reasonable manner;
>     (4)   That the public beach has been and continues to be a unique public recreation area, different in respect to all other public areas within the municipality;
>     (5)   That it is desirable and necessary to preserve the unique nature of the public beaches and to protect all persons who utilize the beaches from harm, undue annoyance, disturbance and inconvenience.
>
>   (b)   *Hours*. Except for municipal beach service equipment or equipment authorized by franchise agreement, it shall be unlawful between the hours of 7:00 p.m. and 8:00 a.m. for any person to set up and leave unoccupied or unattended any

3

> equipment or other items on the public beach including but not limited to shading devices, floats, umbrellas, beach chairs, lounge chairs, life rafts, etc. (collectively, beach wares), so as to interfere with beach cleaning and/or beach concession operations. *Regardless of the hours set forth herein and except for municipal beach service equipment or equipment authorized by franchise agreement, no person or company who for a fee or service as part of, or incidental to, its business operations for the sale, rental, lease, use or delivery of beach wares shall deliver to, place upon, set upon, or leave upon the public beach any beach wares.*

*Id.* § 5–24(a), (b) (emphasis added).

In July 2022, Plaintiffs filed this action asserting seven causes of action: (1) violation of the Sherman Antitrust Act and Clayton Act, (2) regulatory taking under the Fifth Amendment and the South Carolina Constitution, (3) violation of the Privileges or Immunities Clause of the Fourteenth Amendment and the Privileges and Immunities Clause of the South Carolina Constitution, (4) violation of the Contracts Clauses of the United States and South Carolina Constitutions, (5) Federal Declaratory Judgment Act, (6) violation of the South Carolina Antitrust Act, and (7) defamation. ECF No. 1.

In August 2022, the City filed the instant motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). ECF No. 21. Plaintiffs filed a response in opposition, and the City filed a reply. ECF Nos. 29 & 30.

## **Discussion**[4, 5]

---

[4] Although Plaintiffs allege the Federal Declaratory Judgment Act as a separate cause of action, the Act "is remedial only and neither extends federal courts' jurisdiction nor creates any substantive rights." *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 55 (4th Cir. 2011). Consequently, the Court does not separately address this cause of action. *See, e.g.*, *Bristol Univ. v. Accrediting Council for Indep. Colleges & Sch.*, 691 F. App'x 737, 745 n.1 (4th Cir. 2017) (Wynn, J., concurring) ("Bristol's claim under the Declaratory Judgment Act only entitles Bristol to a particular type of relief in the event that either or both of its *substantive* causes of action succeed on the merits." (cleaned up)).

[5] The City briefly argues the Calhouns lack standing as to Counts 1–6. ECF No. 21-1 at p. 5 n.3. However, the argument conflates Article III standing with the separate issue of whether the Calhouns or CGBG—an LLC whose members include the Calhouns—are legally entitled to pursue the claims. *See Martineau v. Wier*, 934 F.3d 385, 391 (4th Cir. 2019) (distinguishing the "Article III standing doctrine" from "the 'real-party-in-interest' requirement").

4

### I.     Antitrust Claims (First and Sixth Causes of Action)

### A.     State-Action Immunity

The City claims state-action immunity from Plaintiffs' federal antitrust claims.[6] ECF No. 21-1 at pp. 5–9. "Under the state action immunity, or *Parker*,[7] doctrine, federal antitrust laws do not apply to anticompetitive restraints imposed by the States as an act of government." *Western Star Hosp. Auth. Inc. v. City of Richmond*, 986 F.3d 354, 358 (4th Cir. 2021) (internal quotation marks omitted). "[I]mmunity will only attach to the activities of local governmental entities if they are undertaken pursuant to a 'clearly articulated and affirmatively expressed' state policy to displace competition." *F.T.C. v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 (2013) (quoting *Cmty. Commc'ns Co. v. City of Boulder*, 455 U.S. 40, 52 (1982)). The "clear articulation" test is satisfied if the anticompetitive activity is the "foreseeable result" of what the State authorized, *id.* at 226–27, "that is, where it is 'clear that anticompetitive effects logically would result' from a given policy or where a regulatory structure inherently displaces unfettered business freedom." *Western Star*, 986 F.3d at 358 (quoting *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 40 (1985)). "[T]he ultimate requirement [is] that the State must have affirmatively contemplated the displacement of competition such that the challenged anticompetitive effects can be attributed to the 'state itself.'" *Phoebe Putney*, 568 U.S. at 229.

The City argues it satisfies the clear articulation test based on two statutes, *see* S.C. Code Ann.

---

[6]     The City does not appear to claim immunity from Plaintiffs' *state* antitrust claim. The Court addresses the state-action immunity doctrine only as it relates to Plaintiffs' *federal* antitrust claims. *See generally Classic Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 919 (D. Kan. 1997) (explaining the doctrine does not apply to state antitrust claims because its purpose "is to immunize state action from federal antitrust scrutiny"). The parties have not cited, and the Court has not located, any South Carolina cases adopting the doctrine. Other states are split on the matter. *Compare Brownsburg Cmty. Sch. Corp. v. Natare Corp.*, 824 N.E.2d 336, 348 (Ind. 2005) ("[W]e join Massachusetts, New Jersey, Oklahoma and New York in rejecting the federal state action immunity doctrine under state antitrust law."), *with id.* at n.13 (noting Iowa and South Dakota have adopted the doctrine), *and Reppond v. City of Denham Springs*, 572 So. 2d 224, 229 (La. Ct. App. 1990) (adopting the doctrine).

[7]     *Parker v. Brown*, 317 U.S. 341 (1943).

§ 5–7–30 (providing a municipality may "grant franchises and make charges for the use of public beaches"); *id.* § 5–7–145 (providing a coastal municipality may enact regulations to ensure the safety of beachgoers, may provide lifeguard services itself or through "a private beach safety company," and may grant that company "the exclusive right" to conduct "limited commercial activities" including rental of beach equipment and sale of items to the public). However, Plaintiffs allege that the City employs lifeguards directly and has not issued a franchise agreement to any provider of lifeguard services; that the City never intended to issue any franchise agreement; that Ordinance 5–14 is a "sham of an ordinance designed to restrict competitive business practices and monopolize" the City's business of renting beach chairs/umbrellas and selling concessions while maximizing profits; that the City has not collected and remitted the taxes (sales/use/accommodations) that a private entity (like CGBG) would have been required to remit; and that the City seeks to impose a monopoly on rentals of beach wares on all its beaches. Compl. at ¶¶ 13, 16, 17, 19, 29, 52.

Accepting Plaintiffs' allegations as true, the Court cannot conclude *at this juncture* that the state-action immunity doctrine bars their federal antitrust claims. *Cf., e.g.*, *Cost Mgmt. Servs., Inc. v. Washington Nat. Gas Co.*, 99 F.3d 937, 943 (9th Cir. 1996) (holding the district court erred in applying state-action immunity at the Rule 12(b)(6) stage because it was required to accept the plaintiff's allegation as true). The City can renew its immunity argument at the summary judgment stage.[8] *See, e.g.*, *Seaman v. Duke Univ.*, 2016 WL 1043473, at *1 (M.D.N.C. Feb. 12, 2016) (denying motions to dismiss "without prejudice to renewal of state action immunity questions at summary judgment after development of a factual record"); *SmileDirectClub, LLC v. Georgia Bd. of Dentistry*, 2019 WL

---

[8] The City argues its "*decision to fund its lifeguard services by making itself the sole provider of on-beach rentals of beach equipment*" is a "foreseeable consequence" of S.C. Code Ann. § 5–7–145. ECF No. 21-1 at p. 8 (emphasis added). While that fact (the italicized text) could be shown through discovery, it is not squarely alleged in Plaintiffs' complaint.

6

3557892, at *5 (N.D. Ga. May 8, 2019) (same).[9]

### B.     Substantive Claims

The City argues Plaintiffs fail to state a plausible monopolization claim. ECF No. 21-1 at pp. 9–10. Plaintiffs allege the City has violated Section 2 of the Sherman Act.[10] Compl. at ¶¶ 44–54; *see* 15 U.S.C. § 2 (prohibiting monopolization of interstate commerce). To establish a Section 2 monopolization claim, Plaintiffs must show (1) the City "possessed monopoly power in a relevant market—i.e., the power to control prices or exclude competition—and (2) that it willfully acquired or maintained that power." *Mayor of Baltimore v. Actelion Pharms. Ltd.*, 995 F.3d 123, 129–30 (4th Cir. 2021). As to the first element, Plaintiffs allege the City is the exclusive lessor of beach wares and exclusive seller of concessions on the entirety of the beaches located within the City.[11] Compl. at ¶¶ 17, 49, 52. As to the second element, Plaintiffs allege that the City never intended to issue a franchise agreement to any third-party vendor; that the City adopted Ordinance 5–14 as a "sham" to restrict competition and monopolize the City's business; and that the City amended Ordinance 5–24 to outlaw Plaintiffs' business practices (namely, delivery and set up of beach wares). *Id.* at ¶¶ 16, 42. The Court

---

[9]     A decision regarding the applicability of the state-action immunity doctrine will solely be a question of law for the Court, after some discovery.

[10]    Plaintiffs also quote Section 3 of the Clayton Act. Compl. at ¶ 46; *see* 15 U.S.C. § 14 (prohibiting certain tying arrangements and exclusive dealing contracts). The City argues Plaintiffs' complaint "contains no allegations regarding any arrangement conceivably covered by this statute." ECF No. 21-1 at p. 9. Plaintiffs' response does not mention a Section 3/Clayton Act claim and only addresses the Section 2/Sherman Act claim. ECF No. 29 at pp. 3–9.

[11]    The City argues Plaintiffs fail to allege a relevant market. ECF No. 21-1 at p. 9; *see E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 441 (4th Cir. 2011) ("The market definition has two components—the relevant product market and the relevant geographic market. Generally, in a Section 2 case, a plaintiff must allege both as a threshold matter." (internal citations omitted)). However, the complaint identifies the product market (beach wares and concessions) and the geographic market (the City's nine-miles of beaches).

concludes Plaintiffs have plausibly alleged a Section 2 monopolization claim.[12]

Plaintiffs also allege the City has violated S.C. Code Ann. § 39–3–120 (prohibiting monopolies). Compl. at ¶¶ 104–112. "Plaintiffs' state law antitrust claim is judged on the merits by the same standard as their Sherman Act claim." *Welchlin v. Tenet Healthcare Corp.*, 366 F. Supp. 2d 338, 353 (D.S.C. 2005); *see Century Aluminum of S.C., Inc. v. S.C. Pub. Serv. Auth.*, 278 F. Supp. 3d 877, 890 (D.S.C. 2017) ("Analysis of South Carolina antitrust claims is inseparable from analysis of federal antitrust claims."). Accordingly, the Court declines to dismiss Plaintiffs' state-law antitrust claim.[13]

---

[12]     Of course, as the City points out, it is immune from damages on this claim under 15 U.S.C. § 35(a) (prohibiting recovery of "damages, interest on damages, costs, or attorney's fees . . . from any local government" for violations of federal antitrust laws). *See, e.g.*, *Hillman Flying Serv., Inc. v. City of Roanoke*, 846 F.2d 71, 1988 WL 35746, at *2 (4th Cir. 1988) ("Recovery of damages against Roanoke on Hillman's federal anti-trust claims is [] proscribed by the Local Government Anti-Trust Act, 15 U.S.C. § 35.").

[13]     The City argues Plaintiffs' allegation of interstate commerce dooms their state-law antitrust claim. ECF No. 21-1 at p. 24; ECF No. 30 at p. 13. The City relies on *Three J Farms, Inc. v. Alton Box Board Co.*, 1978 WL 1459, at *6 (D.S.C. Nov. 29, 1978) ("Even though South Carolina has an antitrust law, 39–3–10 *et seq.*, South Carolina Code of Laws 1976, its application was limited many years ago to exclude activities having an effect upon interstate commerce." (citing *State v. Virginia-Carolina Chem. Co.*, 51 S.E. 455 (S.C. 1905))). The Court also relied on *Three J Farms* in its order denying Plaintiffs' motion for a preliminary injunction. ECF No. 24 at p. 18.
        However, further scrutiny of *Three J Farms* reveals it involved an alleged violation of S.C. Code Ann. § 39–3–**10**, while the instant case involves an alleged violation of S.C. Code Ann. § 39–3–**120**. *Compare* S.C. Code Ann. § 39–3–10 ("Arrangements, contracts, agreements, trusts, and combinations adversely affecting competition or price declared against public policy."), *with id.* § 39–3–120 ("Monopolies declared unlawful."). Moreover, *Three J Farms* has "been criticized . . . as misreading the holding of *Virginia-Carolina Chem. Co.*," *Cheshire v. Coca-Cola Bottling Affiliated, Inc.*, 758 F. Supp. 1098, 1101 (D.S.C. 1990); and *Three J Farms* involved a "significantly more limited holding[ based] on the specific facts before" the court. *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 354 (E.D. Pa. 2004). In sum, Plaintiffs' allegation of interstate commerce may not necessarily be fatal to their state antitrust/monopoly claim.
        Separately, however, the Court questions whether a private cause of action exists for a violation of S.C. Code Ann. § 39–3–**120**. *See Trident Neuro-Imaging Lab'y v. Blue Cross & Blue Shield of S.C., Inc.*, 1982 WL 1955, at *7 (D.S.C. Nov. 2, 1982) (finding no private cause of action because "§ 39–3–190 . . . only allows the Attorney General or the solicitor of the circuit in which an offense is allegedly committed to enforce the provisions of the article [in which § 39–3–**120** is located]"). *Contra Dickerson v. Coca-Cola Bottling Co. Affiliated*, 440 S.E.2d 359, 362 (S.C. 1994) (stating "§ 39–3–30 . . . provides civil remedies for those damaged by violations of § 39–3–10 [which is located in a separate article]"). **The Court questions whether Plaintiffs can even pursue a private cause of action under S.C. Code Ann. § 39–3–120, and the parties should be prepared to address this issue in the future.**

**II.     Regulatory Taking**[14]

Plaintiffs allege the City's amendment to Ordinance 5–24 constitutes a regulatory taking. Compl. at ¶¶ 42, 55–77; *see* North Myrtle Beach Code § 5–24(b) ("[E]xcept for municipal beach service equipment or equipment authorized by franchise agreement, no person or company who for a fee or service as part of, or incidental to, its business operations for the sale, rental, lease, use or delivery of beach wares shall deliver to, place upon, set upon, or leave upon the public beach any beach wares."). The City contends Plaintiffs fail to state a regulatory taking claim. ECF No. 21-1 at pp. 11–16.

"Both Article I, § 13 of the South Carolina Constitution and the Fifth Amendment to the United States Constitution provide that private property shall not be taken for public use without the payment of 'just compensation.'" *Hardin v. S.C. Dep't of Transp.*, 641 S.E.2d 437, 441 (S.C. 2007). To determine whether "a regulation can be so burdensome as to become a taking," courts balance three factors under *Penn Central*:[15] "(1) the economic impact of the regulation on the claimant; (2) the extent to which the regulation has interfered with distinct investment-backed expectations; and (3) the character of the governmental action." *Clayland Farm Enterprises, LLC v. Talbot Cnty.*, 987 F.3d 346, 353 (4th Cir. 2021); *see Hardin*, 641 S.E.2d at 441 (applying *Penn Central* test).

*First*, Plaintiffs have plausibly alleged an adverse economic impact by claiming that their business services include delivery, set up on the beach, and the taking down and removal of chairs and accessories; that the City amended Ordinance 5–24 to specifically outlaw these business practices; and thus Ordinance 5–24 jeopardizes the economic viability of Plaintiffs' business (including chilling its

---

[14]     As to both Plaintiffs' regulatory taking and Contracts Clause claims, the City argues the amendment to Ordinance 5–24 did not change the law "but at most confirmed and reinforced the existing law established in Code § 5–14." ECF No. 21-1 at pp. 10–11. However, Plaintiffs' allegations indicate they were not ticketed *until after the amendment of Ordinance 5–24* in June 2022. Compl. at ¶¶ 37, 38, 42.

[15]     *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104 (1978).

9

value to customers and potential purchasers). Compl. at ¶¶ 20, 42, 60, 67, 68, 74. *Second*, Plaintiffs have plausibly alleged interference with their reasonable investment-backed expectations by claiming that the business services (i.e., the delivery and set up) were not prohibited upon beginning business in 2019; that City officials advised them there was no issue presented with setting up on the beach at that time; that the City Attorney conceded Plaintiffs' business practices did not violate Ordinance 5–14;[16] that Plaintiffs entered into annual contracts for the provision of beach wares; and that the City interfered with Plaintiffs' reasonable expectations by subsequently amending Ordinance 5–24 in 2022 to outlaw the delivery and set up services on the beach. *Id.* at ¶¶ 20, 22, 23, 26, 34, 42, 60, 67–69, 72, 73. *Third*, Plaintiffs have plausibly alleged the City's actions were inequitable and illegitimate by claiming the City targeted them and amended Ordinance 5–24 in 2022 to outlaw their business practices of delivery and set up. *Id.* at ¶¶ 42, 69; *see generally Laurel Sand & Gravel, Inc. v. Wilson*, 519 F.3d 156, 165 (4th Cir. 2008) (analyzing whether the government's action was "legitimate and equitable").[17]

The Court concludes Plaintiffs have plausibly alleged a regulatory taking claim.

---

[16] Clearly, there is no mention of "delivery" and/or "set up" in Ordinance 5–14, as those terms were not mentioned until 2022 in the amendment to Ordinance 5–24. In fact, at the hearing on Plaintiffs' motion for a preliminary injunction, the City's counsel acknowledged as much. *See* ECF No. 28 at p. 51 ("THE COURT: Let me ask you, 5–14, there's no specific language in 5–14 prohibiting placement, set up or delivery of beach wares, is there, in 5–14? MR. DORN: That's correct, Your Honor."); *id.* at pp. 51–52 ("THE COURT: . . . [T]he word[s] set up or delivery are not specifically mentioned anywhere in 5–14 and I guess just looking at [] 5–24 . . . it would seem that it was specifically designed to clear up any misunderstanding[.]. MR. DORN: It was.").

[17] The City's arguments are unavailing. Regarding the economic impact factor, the City invokes "its opposition to Plaintiffs' motion for preliminary injunction" and asserts "CGBG only earns delivery and set up fees from customers who select that option in conjunction with their rental package." ECF No. 21-1 at pp. 13–14. While this purported fact could be shown through discovery, it is not squarely alleged in Plaintiffs' complaint. Regarding the interference factor, the City contends that "[e]ven if the amendment of Code § 5–24 deprived Plaintiffs of the ability to provide delivery and set up, there is no taking because Plaintiffs can still pursue their core business of beach equipment rentals." *Id.* at p. 15. However, Plaintiffs' complaint does not draw such a rigid dichotomy between rentals and delivery/set up, as their allegations indicate delivery and set up are equally part of their business services. *See, e.g.*, Compl. at ¶ 20, 23. Regarding the governmental action factor, the City goes beyond the allegations of the complaint and argues it "acted within the scope of its police power to protect the beach-going public from the potential hazards posed by flimsy, improperly set-up beach equipment." ECF No. 21-1 at p. 15. To reiterate, **the Court must adhere to the Rule 12(b)(6) standard in evaluating Plaintiffs' claims.**

### III. Privileges/Immunities

Plaintiffs allege claims under the Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution and the Privileges and Immunities Clause of the South Carolina Constitution. Compl. at ¶¶ 78–86. They assert the City has violated their privileges and immunities by amending Ordinance 5–24 to outlaw their business practices and by seeking to impose a monopoly on beach ware rentals. Compl. at ¶¶ 81–82.

Section 1 of the Fourteenth Amendment provides, "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States." U.S. Const. amend. XIV, § 1. "[T]he Privileges or Immunities Clause protects only those rights 'which owe their existence to the Federal government, its National character, its Constitution, or its laws.'" *McDonald v. City of Chicago*, 561 U.S. 742, 754 (2010) (quoting *Slaughter-House Cases*, 83 U.S. 36, 79 (1872)); *see Madden v. Kentucky*, 309 U.S. 83, 90–91 (1940) (discussing the *Slaughter-House Cases* and stating the Clause "protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship"). Here, the City's alleged actions have no bearing on the Calhouns' national citizenship rights.[18] *See Madden*, 309 U.S. at 92–93 (stating the right "to operate businesses free of state regulation" and "the right to carry out an incident to a trade, business or calling" are "not privileges and immunities protected by the Fourteenth Amendment" or "privilege[s] of national citizenship"); *Colon Health Ctrs. of Am., LLC v. Hazel*, 733 F.3d 535, 548 (4th Cir. 2013) (explaining the *Slaughter-House Cases* "confined the reach of that clause to a set of national

---

[18] As the City argues and Plaintiffs seem to acknowledge, CGBG cannot maintain this claim as a limited liability company. *See Hague v. Comm. for Indus. Org.*, 307 U.S. 496, 514 (1939) ("Natural persons, and they alone, are entitled to the privileges and immunities which Section 1 of the Fourteenth Amendment secures for 'citizens of the United States.'"); *see, e.g.*, *Leiser L. Firm, PLLC v. Supreme Ct. of Virginia*, 2015 WL 1936356, at *3 n.2 (E.D. Va. Apr. 28, 2015) (noting the LLC plaintiff failed to state a claim under the Clause), *aff'd*, 632 F. App'x 127 (4th Cir. 2016); *BoylstonD3 LLC v. Galvin*, 496 F. Supp. 3d 692, 697 (D. Mass. 2020) (same).

rights that does not include the right to pursue a particular occupation"); *see, e.g.*, *Slaughter-House Cases*, 83 U.S. at 76–80 (rejecting a challenge under the Clause to a state-sanctioned monopoly within a city). Consequently, Plaintiffs fail to state a claim under the Fourteenth Amendment's Privileges or Immunities Clause, and the Court will dismiss this claim with prejudice.[19] *See United States ex rel. Carson v. Manor Care, Inc.*, 851 F.3d 293, 305 n.6 (4th Cir. 2017) (noting dismissal with prejudice is proper if amendment would be futile).

The Privileges and Immunities Clause of the South Carolina Constitution provides, "The privileges and immunities of citizens of this State and of the United States under this Constitution shall not be abridged." S.C. Const. art. I, § 3. "These privileges and immunities are from their nature incapable of limitation by exact definition." *Tillman v. Tillman*, 66 S.E. 1049, 1052 (S.C. 1910). Unlike the Fourteenth Amendment, the "state's Privileges and Immunities Clause" protects "fundamental rights and interests." *Singh v. Singh*, 837 S.E.2d 651, 657 (S.C. Ct. App. 2019), *aff'd as modified*, 863 S.E.2d 330 (S.C. 2021). Here, the parties have not squarely addressed the scope of South Carolina's Privileges and Immunities Clause. Accordingly, the Court declines to dismiss this claim. *See generally Wright v. North Carolina*, 787 F.3d 256, 269 (4th Cir. 2015) (criticizing the district court for dismissing a state-law claim under Rule 12(b)(6) because the court's "failure to find state law support for dismissal at the Rule 12(b)(6) stage should have given the district court pause").

---

[19] The parties cite cases dealing with the Privileges *and* Immunities Clause of Article IV, § 2 of the federal Constitution, but Plaintiffs' complaint only invokes the Privileges *or* Immunities Clause of the Fourteenth Amendment. *See generally Barefoot v. City of Wilmington*, 306 F.3d 113, 125–26 (4th Cir. 2002) (explaining "[t]he two clauses are very different" because the Clause in Article IV "is designed to ensure to a citizen of State A who ventures into State B the same privileges which the citizens of State B enjoy," while the Clause in the Fourteenth Amendment "protects all citizens against abridgement by states of rights of national citizenship as distinct from the fundamental or natural rights inherent in state citizenship" (internal quotation marks omitted)). In any event, the Court notes Plaintiffs cannot pursue a claim under the Privileges and Immunities Clause of Article IV because they are South Carolina residents. *See United Bldg. & Constr. Trades Council of Camden Cnty. & Vicinity v. Mayor & Council of Camden*, 465 U.S. 208, 217 (1984) (holding in-state residents seeking to challenge a municipal ordinance "have no claim under the Privileges and Immunities Clause").

### IV.     Contracts Clause

Plaintiffs allege the City violated the Contracts Clauses of the United States and South Carolina Constitutions by amending Ordinance 5–24 (without establishing any amortization period) to render Plaintiffs' existing contracts unlawful. Compl. at ¶¶ 87–95.

Both the federal and state constitutions prohibit state law from "impairing the obligation of contracts." U.S. Const. art. I, § 10; S.C. Const. art. I, § 4; *see Sveen v. Melin*, 138 S. Ct. 1815, 1821 (2018) ("The Contracts Clause restricts the power of States to disrupt contractual arrangements."); *Ken Moorhead Oil Co. v. Federated Mut. Ins. Co.*, 476 S.E.2d 481, 485 (S.C. 1996) ("follow[ing] federal precedent construing the federal Contract Clause"). "To determine when such a law crosses the constitutional line, th[e Supreme] Court has long applied a two-step test": (1) "whether the state law has operated as a substantial impairment of a contractual relationship" and (2) "whether the state law is drawn in an appropriate and reasonable way to advance a significant and legitimate public purpose." *Sveen*, 138 S. Ct. at 1821–22 (internal quotation marks omitted).

*First*, Plaintiffs have plausibly alleged a substantial impairment by claiming that CGBG had entered into annual contracts with homeowners' associations and individuals for the provision of beach chairs, umbrellas, and wares; that these contracts were in place when the City amended Ordinance 5–24; that the amendment rendered those contracts unlawful by prohibiting certain business practices (namely, delivery and set up on the beach);[20] and that the amendment did not establish any amortization period during which Plaintiffs could recover their business investment. Compl. at ¶¶ 20, 26, 42, 90–92; *see*

---

[20] The City argues that "providing beach equipment is not necessarily the same as delivering and setting it up on the beach" and that "any impairment was not substantial because any contracts CGBG may have had were not abolished but merely modified." ECF No. 21-1 at pp. 19–20. However, Plaintiffs allege their business services entail on-beach delivery and set up, Compl. at ¶ 20, and these services appear to be part of the annual contracts, *id.* at ¶¶ 26, 91–92. Notably, "[t]otal destruction of contractual expectations is not necessary for a finding of substantial impairment." *Energy Rsrvs. Grp., Inc. v. Kansas Power & Light Co.*, 459 U.S. 400, 411 (1983).

*Sveen*, 138 S. Ct. at 1822 (explaining the substantial impairment analysis involves consideration of "the extent to which the law undermines the contractual bargain, interferes with a party's reasonable expectations, and prevents the party from safeguarding or reinstating his rights").

*Second*, Plaintiffs have plausibly alleged the amendment to Ordinance 5–24 was not appropriately and reasonably drawn to advance a significant and legitimate public purpose. *See Sveen*, 138 S. Ct. at 1822 (explaining this "inquiry turns to the means and ends of the legislation"). They claim that their business license was issued and renewed before amendment of Ordinance 5–24; that City officials advised Plaintiffs there was no issue presented with setting up on the beach; that the City Attorney conceded Plaintiffs' business practices did not violate Ordinance 5–14; that their business operations begun in 2019 were not prohibited until the amendment in 2022; that the City "targeted" them by enacting the amendment; that no amortization period was included; and that the City actually intended to impose a monopoly via the amendment. Compl. at ¶¶ 21–23, 34, 81–82, 87, 90, 92.

The Court concludes Plaintiffs have plausibly alleged a Contracts Clause violation.

## V.    Defamation

Plaintiffs assert a defamation claim under South Carolina law. Compl. at ¶¶ 113–119. To state such a claim, they must allege "(1) a false and defamatory statement was made; (2) the unprivileged statement was published to a third party; (3) the publisher was at fault; and (4) either the statement was actionable irrespective of harm or the publication of the statement caused special harm." *Fleming v. Rose*, 567 S.E.2d 857, 860 (S.C. 2002).[21]

---

[21]    The City asserts a qualified privilege, ECF No. 21-1 at p. 25; ECF No. 30 at p. 13, but a Rule 12(b)(6) motion is not the appropriate mechanism to assert that affirmative defense. *See Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993) ("A motion under Rule 12(b)(6) is intended to test the legal adequacy of the complaint, and not to address the merits of any affirmative defenses. In the limited circumstances where the allegations of the complaint give rise to an affirmative defense, the defense may be raised under Rule 12(b)(6), but only if it clearly appears on the face of the complaint."); *Swinton Creek Nursery v. Edisto Farm Credit,*

Plaintiffs allege the City committed defamation by (i) "issuing repeated citations" to the Calhouns "wherein it is alleged that Plaintiffs have repeatedly violated valid and enforceable laws" and (ii) "making commentary about Plaintiffs' unlawful conduct." Compl. at ¶ 114.  However, as the City points out, Plaintiffs' own complaint indicates the Calhouns were in fact issued at least eight summons and criminal citations for ordinance violations, *id.* at ¶ 38; and as for the City's "commentary," Plaintiffs fail to specify the precise statement(s) made.  ECF No. 21-1 at pp. 25–26; ECF No. 30 at p. 13; *cf., e.g.*, *Colleton v. Charleston Water Sys.*, 225 F. Supp. 3d 362, 369 (D.S.C. 2016) (stating a defendant "cannot be expected to defend against an allegation that" the plaintiff was defamed by "a statement heard by unknown persons at an unknown place at an unknown time").  Tellingly, Plaintiffs state in their response that "at this pre-discovery juncture[,] *it is too early to know if Defendant did not make any actionable defamatory statements regarding the Plaintiffs*." ECF No. 29 at p. 16 (emphasis added); *see Colleton*, 225 F. Supp. 3d at 370 ("Plaintiff is not entitled to wait until after discovery before pleading his [defamation claim] properly, despite his assertion to the contrary."); *Doe v. Cannon*, No. 2:16-cv-00530-RMG, 2017 WL 663815, at *3 (D.S.C. Feb. 15, 2017) (same).

The Court concludes Plaintiffs fail to sufficiently allege the first element of a defamation claim. The Court will dismiss the claim without prejudice and with leave to amend it with well-pleaded factual allegations. *See, e.g.*, *id.* (dismissing defamation claim without prejudice and with leave to amend).

## Conclusion

The Court **DENIES IN PART AND GRANTS IN PART** the City's Motion to Dismiss [ECF No. 21].  Specifically, the Court **DISMISSES WITH PREJUDICE** Plaintiffs' claim under the

---

*ACA*, 514 S.E.2d 126, 134 (S.C. 1999) (discussing "the affirmative defense of conditional or qualified privilege"); *see also Redfearn v. Pusser*, 280 S.E.2d 206, 207 (S.C. 1981) ("Privilege is a matter of defense and ordinarily not available on demurrer.").

Privileges or Immunities Clause of the Fourteenth Amendment, **DISMISSES WITHOUT PREJUDICE** Plaintiffs' defamation claim, and **DENIES** the City's motion as to Plaintiffs' other claims.

    **IT IS SO ORDERED.**

Florence, South Carolina       s/ R. Bryan Harwell
December 28, 2022      R. Bryan Harwell
     Chief United States District Judge