**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | |
|---|---|
| Cherry Grove Beach Gear, LLC, Derek Calhoun, and Jacqueline Calhoun, | Case No.: 4:22-cv-02198-RBH |
| Plaintiffs, vs. | **DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| City of North Myrtle Beach, Defendant. | |

Defendant the City of North Myrtle Beach (the "City") respectfully submits this Reply Memorandum in further support of its motion for summary judgment (ECF No. 58, the "Motion") and Memorandum in Support (ECF No. 58-1, "City's Memorandum") and in reply to the Opposition (ECF No. 61) filed by Plaintiffs Cherry Grove Beach Gear, LLC ("CGBG"), Derek Calhoun, and Jacqueline Calhoun ("the Calhouns"). Plaintiffs' Opposition continues their pattern of disregarding applicable procedural rules, presenting a distorted and inaccurate view of the operative facts, and advancing inapplicable or even incorrect legal principles. This Court should not countenance such and should accordingly grant the City's motion for summary judgment in full and dismiss this action with prejudice. The Court should strike Plaintiffs' "cross-motion" for summary judgment as untimely, because it was not filed by the November 20, 2023 deadline for dispositive motions under the Scheduling Order. (ECF No. 47.)

## I.      INTRODUCTION

In its Order denying Plaintiffs' motion for a preliminary injunction early in the litigation, this Court rightly expressed skepticism regarding Plaintiffs' ability to marshal evidence sufficient to prove any of their claims. (ECF No. 24, at 8-19 (concluding that Plaintiffs failed to show a likelihood of success on the merits of any of their claims).) The Court recognized several core

weaknesses in Plaintiffs' claims. As to Plaintiffs' federal antitrust claim, the Court held that the

two relevant statutes—S.C. Code Ann. § 5-7-30 and S.C. Code Ann. § 5-7-145—"appear to

support the argument that a municipality may engage in the anticompetitive conduct at issue here,"

in that the City's statutory authority under § 5-7-30 to "grant franchises and make charges for the

use of public beaches," and its "explicit ability" under § 5-7-145 "to grant the exclusive right to

rent beach equipment on the beach to a private beach safety company" collectively:

> appear to inherently contemplate that a municipality may deny a franchise to
> another party, and itself engage in the activity at issue in this case.
> Anticompetitive effects "logically result" from that authority and that
> authority "inherently displaces unfettered business freedom." In sum, at this
> stage it appears foreseeable that in pursuit of the State goals embodied in § 5-
> 7-30 and § 5-7-145 a municipality can use its lawfully delegated powers to
> deny franchises, limit business activity on public beaches, and engage in the
> business activity itself.

(ECF No. 24, at 11 (quoting *Western Star Hosp. Auth. v. City of Richmond*, 986 F.3d 354, 358 (4th

Cir. 2021)). Similarly, the Court expressed doubt that Plaintiffs could make the required showing

of a total or near-total loss of value in their business property, "as it appears Plaintiffs can continue

renting beach equipment even though they will not be able to provide delivery and set up on the

beach," as several other companies do, and Plaintiffs had not shown that they would lose *all* of

their contracts if on-beach delivery and set up was not an option. (ECF No. 24, at 13-14, 15.)

The Court was equally skeptical of Plaintiffs' Contracts Clause claim, noting that Plaintiffs

had not identified how many contracts involving on-beach delivery and setup were in existence

when § 5-24 was amended, nor had they demonstrated that any impairment of such contracts was

substantial. (*Id.* at 16.) The Court also identified a deeper problem:

> Plaintiffs have been on notice that the city interpreted § 5-14 as prohibiting
> beach set up without a franchise agreement since at least April 3, 2021, so it
> should not come as a surprise to Plaintiffs that Defendant would enact an
> ordinance specifically and explicitly prohibiting beach set up. Furthermore,
> § 5-7-145 specifically contemplates Defendant's ability to grant the exclusive

right to rent beach equipment to one company, so Plaintiffs were on notice that their ability to set up equipment on the beach was not guaranteed.

(*Id.* at 17.)

Lastly, the Court recognized the overriding importance of the public interest:

[I]f the Court enjoined enforcement of Ordinances §§ 5–14 and 5–24, then Defendant would likely face competition from not only Plaintiffs but also Plaintiffs' competitors, which could substantially diminish Defendant's rental revenue and may cause tax increases to pay for lifeguards, beach patrol, and beach maintenance. A wave of undesirable commercial activity could wash upon the beach. In contrast, while Plaintiffs cannot deliver or set up equipment on the beach without running afoul of the ordinances, they can still continue operating their rental business—just like multiple other vendors in the area already do. Moreover, the public interest in keeping the public beach safe by funding lifeguard services and subsidizing the cost of beach patrol and beach cleanup (which minimizes additional taxation to pay for these services) and reducing a commercial merchant presence on the strand clearly outweighs Plaintiffs' interest in having an optional delivery/set-up feature of their rental equipment.

(*Id.* at 21.)

The Court entered its order denying the preliminary injunction on September 2, 2022. In the ensuing 15 months, Plaintiffs have had ample time to gather evidence to support evidence in support of their claims. The time to present that evidence was in their Opposition. They have not done so, and indeed Plaintiffs make no attempt to refute any of the undisputed facts set forth in the City's Memorandum. And, while Plaintiffs assert various legal arguments in opposition to the Motion, all of them are legally deficient.

## II.     ARGUMENT

## A.     Plaintiff's "Cross-Motion" for Summary Judgment Is Untimely

Plaintiffs style their filing as an Opposition to the City's motion and a "Cross Motion for Summary Judgment." (Opp. at 1 (allcaps omitted).). Plaintiffs contend that since the City has moved for summary judgment on Plaintiffs' federal antitrust claim, "this Court has the power to rule on Plaintiffs' cross motion for Summary Judgment as to the same." (Opp. at 1.)

Plaintiffs are incorrect. A cross-motion for summary judgment is not a responsive filing to a summary judgment motion, it is a dispositive motion in its own right. Accordingly, if Plaintiffs wanted to seek summary judgment they were required to do so by the November 20, 2023 deadline for dispositive motions set forth in the Scheduling Order. (ECF No. 47.) As this Court has held:

> A cross motion for summary judgment is not a responsive pleading predicated on the presence of an initial motion for summary judgment filed by the opposing party. The plaintiff's ability to file a motion for summary judgment is independent of any choice of the defendant to do so, and it was his responsibility to seek an extension of time if he could not file it in the time allotted.

*Shaw v. Electrolux Home Prod., Inc.*, No. 8:08-cv-221-RBH, 2009 WL 3063009, at *13 (D.S.C. Sept. 21, 2009); *see also Singletary v. Wachovia Mortg. Corp./Wells Fargo*, No. 2:11-cv-484-RMG, 2013 WL 1194762, at *2 (D.S.C. Mar. 22, 2013) (denying cross-motion for summary judgment as untimely where it was not filed by the dispositive motion deadline).[1]

**B.    Code § 5-14 Prohibits Delivery and Set Up on the Beach**

**1.    Plaintiffs' Interpretation of § 5-14 Is Unworkable and Violates Settled Rules of Statutory Construction**

Plaintiffs argue at length that Code § 5-14 does not prohibit on-beach delivery and set up because the ordinance does not *explicitly* state that "sell[ing], leas[ing] or rent[ing] … goods wares, or other property" includes delivering and setting up on the beach the equipment that has been sold, leased, or rented. (Opp. at 3-6.) Plaintiffs' position is contrary to the text of the ordinance, settled rules of statutory construction, and basic common sense.

To begin, Plaintiffs' hyper-literal reading of Code § 5-14 cannot be squared with their own deposition testimony. Derek Calhoun testified that delivery and set up on the beach is part of the

---

[1] If the Court is inclined to consider Plaintiffs' cross-motion despite its untimeliness, the City respectfully requests that it be allowed to respond according to the deadlines and length limitations normally applicable to motion oppositions, rather than on the truncated schedule and more restrictive length limitations applicable to reply briefs.

rental transaction for customers who select that option. (ECF No. 58-4 at 8-11.) As the City has already explained (City's Mem. at 6-7), it would be absurd to construe Code § 5-14 as prohibiting an entire rental transaction (selection, payment, and set up) on the beach, but not prohibiting a part of that same transaction.

Additionally, Plaintiffs are asking this Court to adopt a novel and untenable rule of statutory construction: an activity is legal unless it is expressly prohibited by an ordinance or statute. But such a rule would plainly be unworkable: it simply is not possible for a legislative body to imagine, much less articulate, every possible application of an ordinance or statute. That is why it has long been established that an enactment is sufficiently specific if it "provide[s] people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." *Johnson v. Quattlebaum*, No. 8:14-cv-3751-MGL, 2015 WL 5554612, at *9 (D.S.C. Sept. 21, 2015) (quoting *Hill v. Colorado*, 530 U.S. 703, 732 (2000)). *Accord Town of Mount Pleasant v. Chimento*, 401 S.C. 522, 535, 737 S.E.2d 830, 839 (2012) (rejecting vagueness challenge where "a person of reasonable intelligence would understand the statute to prohibit gambling on a card game at a house where players were invited on a regular basis to engage in this activity").

Plaintiffs' myopic focus on the literal text of § 5-14 ignores several other guiding principles of statutory construction, including that a court:

> must consider the context in which the statutory words are used. The statute should be read as a whole and statutory phrases should not be construed in isolation. Courts should disfavor interpretations of statutes that render language superfluous. Statutes should be interpreted to avoid untenable distinctions and unreasonable results whenever possible.

*George v. Duke Energy Ret. Cash Balance Plan*, 560 F. Supp. 2d 444, 458 (D.S.C. 2008) (cleaned up). *Accord State v. Dawkins*, 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002) ("[T]he canons of construction certainly allow the court to consider the statute as a whole and to interpret its words in light of the context." (internal quotation marks omitted)).

Above all, Plaintiffs' narrow and crabbed interpretation fails to give effect to all of the language of § 5-14 and does not account for its place in the larger context of the City's authority and obligation "to provide lifeguard and other safety related services on and along the public beaches within its corporate limits" and to "enact and enforce regulations it determines necessary for the safety of all persons on the beach." S.C. Code Ann. § 5-7-145(A).

Plaintiffs admit that under § 5-7-145(B), if the City were to engage a private company for lifeguard services, "then said private beach safety company may be granted an 'exclusive right' to rent beach equipment." (Opp. at 14.) This is important because the City must *have* a right in order to *convey* it to someone else. Thus, a necessary corollary of the statutory authority to grant an exclusive franchise to a private company is a municipality's authority to retain such exclusivity for itself, if it decides, as the City has decided, to employ its own lifeguards.

This reading of § 5-7-145 harmonizes perfectly with the manifest intention of the General Assembly in enacting the statute. Plaintiffs want to view § 5-7-145(B) as a provision addressing franchises for commercial activity on the beach, but it is plainly a beach safety statute, and its discussion of franchises for the rental of beach gear must be interpreted in light of this purpose. The obvious purpose of the ability to grant an exclusive franchise to a contracted lifeguard services provider is to help it subsidize the cost of employing lifeguards, since clearly the company cannot charge individual beach goers for lifeguard services. This, in turn, would reduce the overall costs to the municipality.

Just like a private company, the City must pay the lifeguards it employs. Therefore, if the City can grant an exclusive beach rentals franchise to a private company to help defray the costs of employing lifeguards, it must necessarily have the right to keep an exclusive franchise to itself in order to defray those very same costs, as this Court has already recognized. (ECF No. 24, at 11.)

When the text of § 5-14 is considered in light of this larger context, the correct interpretation is inescapable. Section 5-14 prohibits "sell[ing], leas[ing] or rent[ing] any goods, wares or other property" on the public beach. This broad and encompassing prohibition has a single, narrow exception: § 5-14 does not prohibit the City or its employees from "selling and/or renting goods and wares such as beach umbrellas and chairs and concession items *in conjunction with the city providing lifeguard services*." By allowing the City—and only the City—to rent beach umbrellas and chairs, and then only if the activity is performed in conjunction with employment of lifeguards, § 5-14 can only be understood as prohibiting any other company from engaging in any activity that could potentially conflict with the City's exclusive right to rent beach umbrellas and chairs in order to provide funds for the employment of lifeguards.

### 2.   The Correct Interpretation of Code § 5-14 Is Not Material to Plaintiffs' Claims

Even if Plaintiffs are correct that § 5-14 does not prohibit them from providing delivery and set up on the beach, this cannot save Plaintiffs' claims. As set forth at length in the City's Memorandum, and as this Court recognized in its order denying a preliminary injunction, Plaintiffs had ample notice that the City interpreted § 5-14 as prohibiting on-beach delivery and set up. (City's Mem. at 8-11; ECF No. 24, at 15.) In light of this, Plaintiffs should have anticipated that the City would take action to clarify the law in response to the Calhouns' professed inability to understand the meaning of § 5-14 as written.

### C.   The City Is Entitled to Summary Judgment on the Sherman Act Claims on the Grounds of State-Action Immunity

Plaintiffs contend that the City cannot avail itself of state-action immunity because "it is acting as a market participant and not in a mere regulatory capacity." (Opp. at 2.) However, no federal court in the United States has ever adopted a market-participant exception to *Parker* immunity, and the Fourth Circuit squarely rejected the theory in *Western Star Hosp. Auth. Inc. v.*

*City of Richmond*, 986 F.3d 354 (4th Cir. 2021).

  The Fourth Circuit refused to adopt "a novel 'market participant' exception to state action immunity," noting that the "Supreme Court has never recognized such an exception; in fact, it has suggested only that it might possibly exist." *Id.* at 360 (citing *City of Columbia v. Omni Outdoor Advert., Inc.*, 499 U.S. 365, 366 (1991) (noting only a "possible exception"), and *FTC v. Phoebe Putney Health Sys., Inc.*, 568 U.S. 216, 226 n.4 (2013) (refusing to consider whether a market-participant exception exists).) "Nor have *any* of the Courts of Appeals ever concluded that this proposed exception frustrates the invocation of state action immunity, though some have noted that it would, if recognized, introduce considerable tension into federal antitrust law" *Id.* (emphasis in original; citing *Automated Salvage Transp. Inc. v. Wheelabrator Envtl. Sys., Inc.*, 155 F.3d 59, 81 (2d Cir. 1998)). Moreover, "the municipality at issue in the seminal *Hallie* case successfully invoked the Parker doctrine notwithstanding its status as a 'market participant.'" *Id.* (citing *Town of Hallie v. City of Eau Claire*, 471 U.S. 34 (1985). In light of "this unmistakable friction with longstanding Supreme Court precedent," the Fourth Circuit declined the "invitation to steer federal antitrust law into uncharted waters" by adopting the market-participant exception. *Id.*

  Ignoring the controlling authority of *Western Star*, Plaintiffs premise their "market participant" argument on a single sentence of *dicta* cherry-picked from 11th Circuit decision issued in 1993. (Opp. at 5 (citing *Bolt v. Halifax Hosp. Med. Ctr.*, 980 F.2d 1381, 1388 (11th Cir. 1993), for the proposition that "*Parker* immunity does not apply where the State acts not in a regulatory capacity but as a commercial participant in the relevant market).) However, this sentence appears in the *Bolt* court's analysis (and rejection) of a conspiracy exception to *Parker* immunity. *See Bolt*, 980 F.2d at 1387-88. In its discussion, the court noted that the Supreme Court in *Omni* "identified two sentences from *Parker* which might be mistakenly relied upon in support of" a conspiracy

exception to *Parker* immunity, and proceeded to explain why that view is incorrect. The *Bolt* court concluded by quoting a passage from *Omni* that contained a reference to "the **possible** market participant exception." *Bolt*, 980 F.2d at 1388 (quoting *Omni*, 499 U.S. at 366) (emphasis added). Thus, even *Bolt* did not adopt a market participant exception to *Parker* immunity—indeed, the issue was not even presented to the court.

The proposed market participant exception has never actually been applied by any court. Moreover, this Court is bound by the Fourth Circuit's explicit rejection of the theory in *Western Star*. Therefore, Plaintiffs' arguments, which disregard that controlling precedent and ask this Court to apply an exception not recognized by any other federal court, should be rejected.

Plaintiffs also argue that the City is not entitled to state-action immunity "because its monopolistic actions are not pursuant to a clearly articulated state policy to displace competition." (Opp. at 2; *see id.* at 8-16.) As has been thoroughly briefed, South Carolina law provides broad authority to municipalities to specifically displace competition on the beach through at least two statutes: S.C. Code Ann. § 5-7-30 and S.C. Code Ann. § 5-7-145. Section 5-7-30 expressly gives the City the authority to "***grant franchises*** and make charges for the use of public beaches," which is inherently the authority to grant one exclusive franchise, more than one, or none at all. Each of these choices "inherently displaces unfettered business freedom." *Western Star*, 986 F.3d at 358. Therefore, in authorizing the City to "grant franchises" with respect to the public beach, the State clearly and expressly articulates policy in this statute to displace competition with monopoly. *See Forest Ambulance Serv., Inc. v. Mercy Ambulance of Richmond, Inc.*, 952 F. Supp. 296, 302 (E.D. Va. 1997) ("The anticompetitive conduct at issue was a foreseeable result of the [statute] which gives the City the power to grant franchises...." (cleaned up)); *Nursing Registry, Inc. v. E. N. Carolina Reg'l Emergency Med. Servs. Consortium, Inc.*, 959 F. Supp. 298, 307 (E.D.N.C. 1997)

9

(holding county had authority "to restrict competition in the market for ambulance services" because "the ambulance franchise statute" gave the County "wide latitude," including the discretion to provide services itself or to contract for ambulance services).

Moreover, § 5-7-30 also allows municipalities exclusively to "make charges for the use of public beaches." By statute, the municipality is the only entity that can make charges for the use of its public beaches. Again, this inherently grants the City the authority to displace competition on its beaches. The City in this case exclusively exercises this statutory authority by providing and charging for beach gear, which is utilized to pay for beach patrol officers and lifeguards among other things associated with the beach. *See* ECF No. 58-1 at 23. Displacing competition in this way is clearly a foreseeable result of the statutory authority to exclusively make charges for the use of public beaches. *See City of N. Olmsted v. Greater Cleveland Reg'l Transit Auth.*, 722 F.2d 1284, 1287 n.3 (6th Cir. 1983) (affirming application of state action immunity where statute allowed transit authority to "make charges for the use of transit facilities").

In addition, S.C. Code Ann. § 5-7-145 expressly allows the City to "provide lifeguard and other safety related services" either through its own employees or by agreement with a private provider. The language of this statute clearly contemplates the City either retaining sole authority to provide such services itself or entering into an agreement with one private company to provide them. Either way, the statute "contemplate[s] anticompetitive effects." *Coastal Neuro-Psychiatric Assocs., P.A. v. Onslow Mem'l Hosp., Inc.*, 795 F.2d 340, 341 (4th Cir. 1986).

Plaintiffs misconstrue § 5-7-145 in arguing that displacing competition is not a clearly articulated or foreseeable result of this statute. (Opp. at 9-10.) The plain language of the statute allows the municipality, and the municipality alone, "to provide lifeguard **and other safety related services** on and along the public beaches." S.C. Code Ann. § 5-7-145(A) (emphasis added). This

does not limit the authority to only lifeguard services, but expressly allows other safety related services. The record reflects that the City's provision of beach chairs and umbrellas is inherently tied to safety on the beach and further funds the lifeguard and beach patrol operations, which are safety-related services as contemplated by § 5-7-145. (*See* City's Mem. at 4.) As such, this statutory authority contemplates displacing competition in both lifeguard services and beach gear rentals.

As its title indicates, § 5-7-145 primarily addresses lifeguard and safety services on the beach; the statutory language regarding rental of beach equipment is plainly secondary to the grant of a beach safety or lifeguard franchise. While Plaintiffs claim to have sought a franchise for their business, they have never sought a franchise to provide lifeguard services, nor are they qualified or certified to do so. In the absence of an ability to provide lifeguard services, the language of § 5-7-145 does not come into play at all to support Plaintiffs' flawed position. Plaintiffs want a beach gear rental franchise *without providing the lifeguard services,* but that is not an option under § 5-7-145.

Plaintiffs repeatedly describe the City as operating a "monopoly," as though nothing more need be proven than that the City is the exclusive provider of on-beach rental, delivery, and set up of umbrellas and beach chairs. To use the Plaintiffs' word, the City has admitted that it has a "monopoly" over "delivering and setting up beach chairs and umbrellas for rental on the beaches that are adjacent to North Myrtle Beach." (ECF No. 58-3 at 9.) But, this exclusive provision of services stems from clearly articulated state policy and is not an example of unlawful anticompetitive conduct as the Plaintiffs argue through their use of "monopoly."

The foregoing discussion demonstrates that the Court was entirely correct in its analysis of *Parker* immunity in its preliminary injunction order. (ECF No. 24, at 11-12.) Nothing has been

uncovered in discovery to undermine this analysis, nor has the law changed. Because these two statutes each clearly and expressly grant authority to displace competition, or at the very least such a result is reasonably foreseeable, the City is entitled to state action immunity and should be granted summary judgment.

**D.**     **The City Is Entitled to Summary Judgment on Plaintiffs' Regulatory Taking Claim**

Plaintiffs make two arguments in response to the City's motion for summary judgment on their regulatory taking claim: (1) that the City has created a genuine issue of material fact by pointing out the questionable validity of Plaintiffs' calculation of a 58% diminution in value; and (2) that the City "has essentially appropriated each of Plaintiff CGBG's valid contracts that include delivery and set up." (Opp. at 19.) The Court should reject both of these arguments and grant summary judgment to the City on this claim.

First, even if the City could somehow create a dispute of fact by questioning the validity of Plaintiffs' claimed 58% diminution in value, such a dispute would not preclude summary judgment because the validity of the 58% figure is not a *material* fact. *See Herrera v. Finan*, 176 F. Supp. 3d 549, 563 (D.S.C. 2016) (a disputed fact is material if "proof of its existence or non-existence would affect disposition of the case under applicable law"). As the City explained in its Memorandum, even if the 58% figure is valid (which the City does not concede), the City is nevertheless entitled to summary judgment because 58% is well below the minimum threshold to establish that a regulatory taking has occurred. *See Clayland Farm Enters., LLC v. Talbot Cnty.*, 987 F.3d 346, 354 (4th Cir. 2021) (recognizing that a diminution in value of 75% is insufficient, as a matter of law, to establish a regulatory taking). Therefore, any dispute concerning the validity of Plaintiffs' claimed diminution of 58% does not go to a material fact and does not support denial of summary judgment.

Second, Plaintiffs' assertion that the City "appropriated" CGBG's contracts involving

delivery and set up also fails as a matter of law. Appropriation of a contract occurs when the government steps into the shoes of a contracting party and assumes the rights or obligations of the contract. *See Palmyra Pac. Seafoods, L.L.C. v. United States,* 561 F.3d 1361, 1369 (Fed. Cir. 2009) (A party also has a property right in its contracts, but unless "the government has stepped into the shoes of a contracting party so as to appropriate that party's contract rights," there is no taking.). That simply did not happen here: the City neither undertook to perform CGBG obligations under its contracts nor assumed CGBG's right to payment from the customer. Accordingly, no reasonable jury could find that the City appropriated CGBG's contracts. In fact, it is undisputed that Plaintiffs performed all of CGBG's contracts existing when § 5-24 was amended, and thus the value of those contracts was not taken or lost. (D. Calhoun Dep. 76:22-77:5.)

**E.    The City Is Entitled to Summary Judgment as to Plaintiffs' Contracts Clause Claim**

In opposing summary judgment on their Contracts Clause claim, Plaintiffs contend there is a genuine dispute of fact as to whether § 5-14 prohibits on-beach delivery and set up. However, this argument does not respond to the City's actual argument, which is that even if the amendment of Code § 5-24 changed the law (*i.e.*, even if Plaintiffs are correct that § 5-14 does not prohibit on-beach delivery and set up, though the City does not concede this point), the City is nevertheless entitled to summary judgment because (1) none of CGBG's contracts was impaired at all, much less substantially; and (2) the City had a legitimate public purpose in amending § 5-24.

First, Plaintiffs do not dispute—and therefore should be deemed to have admitted—that they fulfilled all contracts involving on-beach delivery and set up that were in existence as of the amendment of § 5-24. Therefore, no reasonable jury could find any impairment of a contract as a result of the amendment of § 5-24. Attempting to make an end-run around the elements of the Contract Clause claim, Plaintiffs contend that they suffered an impairment because the City cited them for ordinance violations while they were performing those contracts. (Opp. at 17.) This is

13

irrelevant, however. The Contracts Clause is concerned with the reasonable expectations of the contracting parties—here, CGBG and its customers. *See, e.g.*, *Transp. Workers Union of Am., Loc. 290 v. Se. Penn. Transp. Auth.*, 145 F.3d 619, 622 (3d Cir. 1998) ("The purpose of the Contract Clause is to protect the legitimate expectations that arise from such contractual relationships from unreasonable legislative interference."). A legislative enactment that impairs existing contracts may have numerous additional consequences, even including potential civil or criminal liability for violations, but that does not mean such consequences have any bearing on the application of the Contracts Clause.

Second, Plaintiffs fail to respond the City's argument that even if CGBG's contracts had been impaired by the amendment of § 5-24, any impairment was outweighed by the legitimate public purpose served by the amendment. By not challenging the City's argument on this point, Plaintiffs have effectively conceded it. Regardless, as the City explained in its Memorandum and in this Reply, the City clearly had a legitimate public purpose in amending § 5-24 to preserve its right under § 5-7-145 to be the exclusive provider of on-beach rental of beach chairs and umbrellas.

## E.    Plaintiffs Have Conceded That No Private Cause of Action Exists for Their State Antitrust Claim

Finally, Plaintiffs fail to respond to the City's argument that no private right of action exists under the South Carolina Antitrust Act, S.C. Code Ann. § 39-3-110, *et. seq.* As discussed in the City's Memorandum, the statutes in this Article are only enforceable by the Attorney General or a circuit solicitor; there is no private right of action. *See* S.C. Code Ann. § 39-3-190. Plaintiffs' Opposition fails to respond with either argument or citation to authority, despite the Court noting that the "parties should be prepared to address this issue in the future." (ECF No. 31 at 8 n.13.) Because the Plaintiffs have failed to respond to the City's argument that there is no private cause of action under the state antitrust laws, the Court should deem Plaintiffs to have conceded this

issue. *See Owens v. Warden of Perry Corr. Inst.,* No. 5:14-cv-03685-RBH, 2015 WL 3871195, at

*16 (D.S.C. June 23, 2015) ("Because he presents no response to Respondent's Motion for

Summary Judgment … the undersigned finds that Petitioner has conceded that those Grounds were

procedurally defaulted and, therefore, are not properly before this court."). For these reasons and

those previously advanced in the City's Motion and Memorandum, the Court should grant

summary judgment to the City on Plaintiffs' state-law antitrust claim.

**F.    The City Is Entitled to Summary Judgment on Plaintiffs' Claim Under the South Carolina Privileges and Immunities Clause**

In opposing summary judgment on this claim, Plaintiffs argue that there are "genuine issues

of material fact regarding Defendant's arbitrary enforcement of" Code § 5-14, but they fail to state

what facts are disputed. Further, they point to no admissible evidence that would allow a

reasonable jury to find that the City's enforcement of § 5-14 has been arbitrary. To the contrary,

the facts developed through discovery—which were set forth in the City's Memorandum and

which Plaintiffs did not try to refute—show that for well over a decade, the City has clearly and

consistently taken the position that § 5-14 prohibits *all* beach gear rental companies from offering

delivery and set up on the beach. The City treated North Strand Beach Services exactly the same

in 2009-10 as it treated Plaintiffs in 2021-22, advising both companies that § 5-14 prohibits on-

beach delivery and setup and warning that continued noncompliance could result in being cited.

The only difference—that Plaintiffs were cited for violating § 5-14, while North Strand was not—

resulted from *Plaintiffs'* decision to continue advertising and providing delivery and set up on the

beach. Plaintiffs should not be allowed to bootstrap their way into a constitutional claim through

their own wrongful acts. The Court should grant summary judgment to the City on this claim.

## V.    CONCLUSION

For all the reasons stated above, the City should be granted summary judgment in its favor.

Respectfully submitted,

s/Elbert S. Dorn
Elbert S. Dorn, Esquire (Fed ID No. 04895)
Maynard Nexsen PC
1101 Johnson Avenue, Suite 300
Myrtle Beach, SC 29577
Phone: 843.213.5412
Fax: 843.216.5414
Edorn@maynardnexsen.com

Marguerite S. Willis (Fed ID No. 11293)
Michael A. Parente (Fed ID No. 13358)
Maynard Nexsen PC
1230 Main Street, Suite 700 (29201)
Post Office Drawer 2426
Columbia, SC 29202
Phone: 803.771.8900
Fax: 803.253.8277
Mwillis@maynardnexsen.com
Mparente@maynardnexsen.com

Kirsten E. Small (Fed ID No. 10005)
MAYNARD NEXSEN PC
104 South Main Street, Suite 900
Greenville, SC 29601
Phone: 864.282.1112
Fax: 864.477.2619
Ksmall@maynardnexsen.com

*Attorneys for Defendant*
*City of North Myrtle Beach*

December 11, 2023
Myrtle Beach, South Carolina